05-3069-cr
United States v. Rodriguez

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued:  November 9, 2006                    Decided: July 24, 2007)

Docket No. 05-3069-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

     *Appellee*,

     -v.-

RAMIRO RODRIGUEZ,

     *Defendant-Appellant*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL and CABRANES, *Circuit Judges*, and RAKOFF,[*] *District Judge*.

Ramiro Rodriguez appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Sweet, *J.*).  He contends his rights under *Brady v. Maryland* and *Giglio v. United States*, under the Jencks Act, and under the Sixth Amendment's Confrontation Clause were violated by the Government's failure to take notes of, and failure to

_____

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1

disclose, its witnesses' previous lies.

Remanded.

HELEN V. CANTWELL, Assistant United States Attorney (John M. McEnany, Assistant United States Attorney, *of counsel*; Michael J. Garcia, United States Attorney for the Southern District of New York, *on the brief*) New York, NY, *for Appellee.*

LAURIE S. HERSHEY, New York, NY, *for Defendant-Appellant.*

LEVAL, *J.*:

This appeal raises questions about the Government's obligations in a criminal case to make notes of, and to disclose, information that may impeach its witnesses or exculpate the defendant. Ramiro Rodriguez was convicted of drug dealing in a multi-defendant trial in which the Government's case rested primarily on the testimony of two cooperating witnesses. During the direct examination of one cooperating witness, the Government elicited that the witness had lied "about everything" during her initial interviews with investigators. Defense counsel demanded that the Government disclose investigators' notes from the interviews, and demanded to be informed of the substance of the witness's false statements. The Government advised that no notes had been made of the false statements and refused to disclose the substance of the lies. The district court at first indicated that the Government should make such a disclosure, but expressed doubt whether disclosure could properly be required where the false statements were not memorialized in a document or a recording, and ultimately declined to compel the disclosure.

Rodriguez contends he suffered a violation of his rights under the Jencks Act, under *Brady*

*v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and under the Sixth Amendment's Confrontation Clause. He contends the Government's investigators were obligated to take notes during their interviews with the cooperating witness, so that the notes could be turned over to the defense, and that, in any event, the Government was obligated under *Brady* to disclose the substance of the witness's lies.

We reject Rodriguez's argument that the Government was obligated to take notes during its interviews with its witness. As for Rodriguez's further arguments – that the Government was obligated to disclose the substance of the witness's lies – we cannot resolve them at this stage of the case. If the district court's reason for declining to compel disclosure was that the statements were not recorded, we do not agree. When the Government is in possession of material information that impeaches its witness or exculpates the defendant, it does not avoid the obligation under *Brady*/*Giglio* to disclose the information by not writing it down.

It does not necessarily follow, however, that the failure to disclose in this case violated any right of Rodriguez. The disclosure obligations of *Brady* and *Giglio* apply only to impeaching or exculpatory information that is of sufficient importance to be deemed "material." *See United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Agurs*, 427 U.S. 97, 108 (1976); *In re United States*, 267 F.3d 132, 142 (2d Cir. 2001). The district court was never advised of the nature of the lies and never ruled on whether the witness's undisclosed prior statements were sufficiently material to give rise to a disclosure obligation. We remand to the district court for a determination of materiality and prejudice.

**Background**

3

Rodriguez was convicted of a conspiracy to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. The Government's case consisted primarily of the testimony of two witnesses. Patricia Lopez, a drug dealer, testified that Rodriguez was sent to the United States by her Colombian suppliers to help her collect on customers' outstanding debts. Noel Espada, one of Lopez's customers, testified that Rodriguez and other members of the conspiracy arranged to pick up $50,000 in drug money from him.

Both witnesses testified pursuant to cooperation agreements with the Government. Lopez had met more than ten times with the representatives of the Government. The Government provided the defense with no notes of those meetings, explaining that no notes had been taken.[1] On direct examination, the Assistant United States Attorney (AUSA) asked Lopez whether she had told the truth during the meetings. Lopez answered that during her initial meetings with the Government, before she signed a cooperation agreement, she lied "about everything":

Q. When you first spoke with the government, did you tell them the truth?
A. No.
Q. What did you lie about?
A. About, about everything.
Q. Why did you lie?
A. Well, I really don't know how to explain this. I did. I was afraid.
Q. Did you eventually tell the government the truth about your involvement with drugs?
A. Yes.
Q. Did you tell the government the truth about all of your criminal activity?
A. Yes.

---

[1] The Government did produce notes of one pretrial statement by Lopez, relating to a different investigation of a shooting, which she acknowledged in her direct testimony to have been false.

Referring to *Brady v. Maryland*, 373 U.S. 83 (1963), defense counsel[2] requested to be told the substance of Lopez's lies, insisting that "the government is obliged to turn over [exculpatory or impeachment material] . . . whether they have yet reduced it to writing or not. . . . [T]hey can't avoid advising the defense . . . simply because they don't write it down." The AUSA refused, taking the position that defense counsel was free to elicit the lies from the witness on cross-examination.

The court expressed sympathy with the defense's position ("I think that is an appropriate request and I will make it. . . . I think the obligation is there . . . ."), but great doubt as to whether such an order could appropriately be addressed to material that had not been recorded or written down ("[Y]ou don't have any piece of paper and you are not going to require . . . .") ("I have never seen anything that says the government has to turn over oral information."). Although the district court at first expressed the view that the Government should disclose the nature of the lies, the Government continued to object, and the court, without further explanation, took no action to compel disclosure and denied the defendant's motion for a mistrial. On cross-examination, defense counsel asked Lopez generally about the fact that she had lied to the Government, but did not ask her to specify what lies she told.

When Noel Espada testified on direct examination, the AUSA asked whether "[p]rior to signing [the cooperation] agreement" he had told "law enforcement agents the truth about [his] own involvement in drug selling." Espada answered that he had initially failed to disclose his brothers'

---

[2] Rodriguez was tried along with other members of the drug conspiracy. Rodriguez's counsel argues that "[i]t was understood at . . . trial that each [defense] attorney did not have to formally join in other attorney[s'] objections." Because the Government does not contest this claim, we assume it to be correct and consider Rodriguez to have joined in any objections or motions made by his co-defendants.

involvement, but testified that he made a full disclosure after he signed his cooperation agreement. On cross-examination, Espada testified that he met with DEA agents around ten times before trial, spanning about fifty hours of interviews, and spoke with the AUSA at least twenty times. Defense counsel objected that the Government had turned over notes relating to only one meeting. The AUSA explained that no other notes had been taken.

## Discussion

### I.     *The Government's Failure to Take Notes*

Rodriguez argues that by failing to take notes during interviews with Lopez and by taking only minimal notes during interviews with Espada, the Government violated his rights under the Jencks Act, under *Brady* and *Giglio*, and under the Sixth Amendment's Confrontation Clause. He suggests that the Government deliberately refrained from memorializing the witnesses' statements in order to evade any obligation to turn over exculpatory and impeaching information to the defense. He equates the Government's behavior with the destruction of evidence – here, "the destruction . . . not of written notes, but rather of any record of the witness[es'] oral statements by failing to preserve them in written form." Moreover, according to Rodriguez, "[b]y snuffing out the record . . . the [G]overnment immunized its two chief witnesses from full and fair cross-examination."

The Jencks Act requires the Government to produce to the defendant any "statement" by the witness that "relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *see id.* § 3500(e) (defining "statement"). The term "statement," however, is defined to include only statements that have been memorialized in some concrete form, whether in a written document or electrical recording. *Id.* § 3500(e). The obligation has no application where, as here,

6

no such memorialization has been created in the first place. *See United States v. Houlihan*, 92 F.3d 1271, 1288 (1st Cir. 1996) ("The Jencks Act does not impose an obligation on government agents to record witness interviews or to take notes during such interviews.").

We reject Rodriguez's contention that *Brady* or the Confrontation Clause requires the Government to take notes during witness interviews. While *Brady* and *Giglio*, as discussed below, obligate the prosecutor in certain circumstances to disclose to the defense material exculpatory and impeaching information, those cases have not been generally construed to require the Government to make written notes for the defendant's benefit.[3] This is in part because the Government's representative may have no way of knowing, upon hearing a witness's statement, that the statement is inconsistent with what the witness will say at a later time. Rodriguez contends that in order to protect the obligation of the Government to turn over inconsistent statements of witnesses once it becomes aware of the inconsistencies, the Government is obligated to take notes of all interviews of potential witnesses. *Brady*, *Giglio*, and the Confrontation Clause have not been construed to impose this obligation, and we decline to extend them in this manner.

---

[3] We need not and do not consider whether, in some cases, the preservation of exculpatory or impeaching information in a concrete form – such as by note taking – may be necessary to ensure that the information can be relayed accurately to the defense. In this case, there is no reason to doubt the ability of the AUSA to inform the defense of any of the witnesses' prior statements that were materially exculpatory or impeaching. Further, although the Government has no obligation to make written notes for the defendant's benefit, we do not reach here the issue of whether the Government, for the purpose of avoiding the disclosure of the initial falsities and inconsistencies of persons who may become Government trial witnesses, may permissibly instruct an agent not to follow the customary practice of taking notes of witness interviews. That question is not before us in this case because, although defense counsel speculated at trial that the Government had specifically directed agents not to follow their alleged ordinary practice of taking notes of interviews with witnesses, the district court expressly gave defense counsel the opportunity to examine the key agent outside the presence of the jury on this point, and defense counsel declined to take advantage of that opportunity.

**II.** *The Government's Disclosure of* **Brady** *Information*

Whether the Government was obligated to make notes of a potential witness's statements and whether it was required to disclose the witness's lies are very different questions. From the fact that the Government is not required to make notes of a witness's statements, it does not follow that the Government has no obligation to inform the accused of information that materially impeaches its witness. *Brady* and its progeny require the Government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Brady*, 373 U.S. at 87 (due process obligation to disclose to the defendant "evidence favorable to an accused"); *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) ("material evidence favorable to the defendant" (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)). This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions. To begin with, it recognizes the possibility that the evidence on which the prosecution relies to prove the defendant's guilt is not necessarily truthful, accurate, or complete, especially when the prosecution's investigations have made it aware of evidence or information that might be favorable to the defense in controverting the Government's proofs.

The Supreme Court explained in *Strickler* that the Government's duty to disclose derives from

> the special role played by the American prosecutor in the search for truth in criminal trials. Within the federal system, for example, we have said that the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78,

8

88 (1935).

*Strickler*, 527 U.S. at 281.

*Brady* information must be disclosed, furthermore, in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial. Thus, the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously. *See Leka*, 257 F.3d at 100 (noting that *Brady* disclosures must be timed so that the defense has a sufficient opportunity to use them); *id.* at 101 ("When . . . a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired."); *see also DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) ("The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an 'opportunity for use.'" (quoting *Leka*, 257 F.3d at 103)). Similarly, disclosures must be sufficiently specific and complete to be useful. *See Leka*, 257 F.3d at 103 (finding *Brady* not satisfied where Government did not disclose details of potential witness's knowledge, because defendant was left to gamble on what witness would say).

If the district court's reason for declining to compel the Government to make disclosure was that the lies were not set forth in any document or recording ("I have never seen anything that says the government has to turn over oral information."), we disagree. As noted above, we agree with the district court that the absence of such memorialization is determinative with respect to any obligation to disclose a witness's statements under the Jencks Act. The considerations under *Brady* and *Giglio*, however, are quite different. *Brady* and *Giglio* obligations, which apply only to material

9

exculpatory and impeaching information, arise because it would be unfair to the defendant – and might cast doubt on the reliability of the verdict – for the trial to be conducted without informing the defendant of such information. The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.[4]

Even if the district court relied on an inappropriate reason for declining to compel disclosure, that would not necessarily mean that a *Brady* violation occurred, which would require overturning

---

[4] Although courts sometimes loosely describe the *Brady* rule as an obligation to turn over favorable "evidence," *see, e.g.*, *Youngblood v. West Virginia*, 126 S. Ct. 2188, 2190 (2006) ("A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused."), it is no answer that the specifics of the lies told by Lopez would not necessarily be admissible evidence. We recognize that the ability of the defense to get them into evidence might depend on several contingencies: If Lopez did not acknowledge her lies when confronted with them on the witness stand, the defense's ability to introduce them through the questioning of a Government investigator who was present when the statements were made would depend on whether the district court found the subject matter of the lies to be "collateral." *See United States v. Purdy*, 144 F.3d 241, 245-46 (2d Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded."). However, the Government's obligations under *Brady* to disclose such information does not depend on whether the information to be disclosed is admissible as evidence in its present form. The objectives of fairness to the defendant, as well as the legal system's objective of convicting the guilty rather than the innocent, require that the prosecution make the defense aware of material information potentially leading to admissible evidence favorable to the defense. In *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), where the prosecution had withheld from the defense a memo including at least some hearsay, we explained that, even assuming no part of the memo was admissible in evidence, the Government was nevertheless obligated under *Brady* to turn it over to the defense, because it "could lead to admissible evidence." *Id.* at 104; *see also DiSimone*, 461 F.3d at 195 (where affiant signed a statement indicating that his relative had confessed to participating in the murder for which defendant was charged, "[t]he information in [the] affidavit was clearly *Brady* material"); *id.* at 195-96 (explaining that *Brady* information must be disclosed so that the defense can pursue leads). Assuming, for example, that the prosecution's investigations revealed a reliable informant's inadmissable hearsay statement to the effect that the defendant was innocent and had been framed by a rival gang, and that the true perpetrator was in fact X, who had thrown the murder weapon into the abandoned mine shaft outside of town, it would seriously undermine reliability of the judgment and the fairness of the proceeding to negate the defense's entitlement to be informed of this on the ground that the hearsay statement was inadmissible.

10

Rodriguez's conviction.[5] A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler*, 527 U.S. at 281; *see also Bagley*, 473 U.S. at 678; *Agurs*, 427 U.S. at 108; *In re United States*, 267 F.3d at 142. The Government declined to disclose the substance of Lopez's lies because it contended at trial that it had satisfied all of its obligations under *Brady*, and the district court, which ruled on a different basis, never considered whether the failure to disclose Lopez's lies would violate *Brady*. Because we do not know what Lopez's lies were, we cannot determine whether disclosure was mandated under *Brady*/*Giglio* or whether the Government's refusal to make disclosure more extensive than Lopez's testimony that she lied "about everything" caused the defendant prejudice. The district court is far better positioned to make this appraisal. Accordingly, we remand, in accordance with the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), so that the district court can evaluate these questions in the first instance.

In the event the court determines that disclosure was mandated, the court will need to consider the Government's argument that any disclosure obligation was fully discharged when the AUSA elicited on the direct examination of Lopez that she had lied "about everything." The Government takes the position that this disclosure gave the defendant the full protection of the *Brady* rule because it armed defense counsel with sufficient information to learn the specifics of Lopez's

---

[5] Rodriguez has not argued that there was a *Brady* violation involving Espada's false statements per se, as opposed to the failure to take notes of them. As to these statements, the Government disclosed at trial that the falsity consisted of Espada's concealment of his brothers' role.

lies by cross-examining her.

We express no definitive views on the Government's argument because the conclusion may vary depending on the nature of the undisclosed material. But at least in some circumstances, telling the defendant that a witness lied, but leaving it for defense counsel to find out what the lies were by questioning the witness before the jury, might as a practical matter foreclose effective use of the impeaching or exculpatory information. Defense counsel would be in the difficult position of having to question the witness blindly in the jury's presence, not knowing whether the answers elicited might seriously incriminate or prejudice the defendant. *See Leka*, 257 F.3d at 103 ("The opportunity for use under *Brady* is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought. A responsible lawyer could not put [the potential witness] on the stand without essential groundwork."). It is not surprising that, despite having pressed for disclosure of the specific lies, none of the defense lawyers ran the risk of asking Lopez what lies she had told. At least in some circumstances, a prosecutor's use of this approach to the discharge of a *Brady* disclosure obligation might well result in the defendant's never learning the nature of the exculpatory or impeaching material which gave rise to the disclosure obligation. While we can easily imagine circumstances in which this approach to *Brady* disclosure would effectively defeat its purpose, it may be appropriate in other circumstances.

The Government acknowledged to the court by letter that "it might have been 'the better practice' to have provided the defense with more information about the substance of Ms. Lopez's prior inconsistent oral statements." It contends nonetheless that its disclosure complied with *Brady* and *Giglio*. We will express no view of the issue on the present facts because the facts are unknown

to us. We note further, however, that while the Government and Lopez characterized her initial statements as "lies," that characterization presumes the truth of the version of events she gave on the witness stand – the very issue at the heart of Rodriguez's trial. Lopez eventually came to characterize her initial statements as lies and her subsequent statements incriminating the defendants as the truth. But she began by characterizing the initial statements as the truth, apparently denying, at least by implication, what she later testified to. It is at least possible that the initial statements were the truthful ones, and that Lopez's later testimony was a falsification designed to serve her interests as a cooperator. We do not know whether the initial statements, if true, tended to exonerate Rodriguez, together with Lopez, or contained leads to exculpatory evidence. Depending on the nature of the undisclosed information, the district court may find it pertinent to explore the sufficiency of the Government's limited disclosure.[6]

---

[6] Another issue which the district court may find pertinent to consider upon remand is whether, assuming the Government was obligated under *Brady* to make disclosure, it was appropriate to defer making the disclosure until mid-trial, during the examination of Lopez. It is difficult to generalize about when disclosures should be made – beyond the conventional statement that disclosure must be timed to ensure "the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." *Leka*, 257 F.3d at 100. Nonetheless, disclosure in advance of trial can be advantageous. If the material proves to be the sort that occasions investigation by the defense (an appraisal better made by the defendant's attorney than by the Government's), failure to disclose before trial may either deny the defendant the benefit the disclosure (and perhaps raise doubts about the accuracy of the verdict), or require a mid-trial adjournment, to the great inconvenience of the court, the jury, and all participants. And, if, as in this case, a question of law arises concerning the disclosure obligation, pretrial disclosure gives counsel the opportunity to research the issue and present authorities to the court. Alternatively, in some cases, mid-trial disclosure may be adequate where defense counsel, before the start of cross-examination, is given the opportunity to cross-examine the witness outside the presence of the jury about the specifics of the lies.

In a letter to the court, the Government stated that "on October 19, 2006 [which was subsequent to this trial], the Department of Justice promulgated a new 'Policy Regarding Disclosure of Exculpatory and Impeachment Information.'" The new Policy, which emphasizes the obligation

13

After hearing the parties, the district court will determine whether there was a *Brady* violation, including whether Lopez's undisclosed statements were sufficiently material that the Government was obligated under *Brady*/*Giglio* to make disclosure; if so, whether the Government discharged that obligation by its partial disclosure; and whether the defendant knew or should have known the information in question. We direct the parties to advise us promptly of the district court's ruling.

If either party wishes to contest that ruling, that party must file a letter brief within thirty days thereof, and the opposing party will have two weeks to respond. The appeal from the district court's ruling will be referred to this panel. If a party desires expedited review, that should be clearly requested in the letter. If within thirty days neither party contests the district court's ruling, upon receipt of advice of the ruling and of the lapse of thirty days, we will close the appeal.

We have reviewed all of Rodriguez's other claims and find them to be without merit.

---

to disclose exculpatory and impeachment information within sufficient time for its use at trial, specifies that disclosure will typically be required before trial, and that prosecutors "must obtain supervisory approval not to disclose impeachment information before trial." The Government's letter acknowledges that its conduct at Rodriguez's trial would not have satisfied the requirements of the Policy. The Government nonetheless contends that its disclosures complied with *Brady* and *Giglio*.

We recognize that in many instances the Government will have good reason to defer disclosure until the time of the witness's testimony, particularly of material whose only value to the defense is as impeachment of the witness by reference to prior false statements. In some instances, earlier disclosure could put the witness's life in jeopardy, or risk the destruction of evidence. Also at times, the Government does not know until the time of trial whether a potential cooperator will plead guilty and testify for the Government or go to trial as a defendant.

Being ignorant of the pertinent facts, we offer no speculation with regard to the Government's timing of its limited disclosure of Lopez's prior inconsistent statements. We note only that this question may prove pertinent to the district court's inquiry in the event it finds the Government was obligated to make disclosure.

**Conclusion**

This case is hereby remanded to the district court for further proceedings.