**UNITED STATES of America, Appellee,**

v.

**Robert SPEED, Defendant–Appellant.**

No. 06–2649–cr.

United States Court of Appeals, Second Circuit.

April 7, 2008.

Richard B. Lind, New York, NY, for Defendant–Appellant.

Reed Michael Brodsky, Assistant United States Attorney (Diane Gujarati, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. AMALYA L. KEARSE, Hon. ROSEMARY S. POOLER, Circuit Judges.

### SUMMARY ORDER

Robert Speed appeals from a judgment of conviction entered on May 22, 2006 in the United States District Court for the Southern District of New York (Castel, *J.*). Speed was convicted, following a jury trial, of participating in a racketeering enterprise, 18 U.S.C. § 1962(c), conspiring to commit racketeering, 18 U.S.C. § 1962(d), using a firearm in furtherance of crimes of violence, 18 U.S.C. § 924(c)(1)(A)(ii), being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), conspiring to transport stolen goods in interstate commerce and to sell stolen goods, 18 U.S.C. § 371, transporting stolen property across state lines,

18 U.S.C. §§ 2314 and 2, and possessing and selling stolen property, 18 U.S.C. §§ 2315 and 2. The jury also found that seven racketeering acts had been proven, including six acts of robbery, and one act of transporting stolen property from New Jersey to New York and subsequently selling the stolen items in New York. Speed was sentenced principally to 420 months' incarceration.

This appeal makes several arguments, discussed below, challenging Speed's conviction and sentence. The parties' familiarity with the underlying facts, the procedural history, and the issues presented for review is presumed.

■ *A. Venue as to Firearm Offense.* Speed attacks his conviction on the § 924(c)(1) firearm offense on the ground that venue was not proper in the Southern District of New York. Speed argues that the underlying crimes—a conspiracy to commit robbery, and the robbery, of a New Jersey residence—were committed solely in New Jersey and therefore the gun offense occurred solely in New Jersey. An offense must be prosecuted in the district where it was "committed," U.S. Const. art. III, § 2, cl. 3, as "determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales,* 524 U.S. 1, 5, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (internal quotation marks omitted). "In a conspiracy prosecution, 'venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators.'" *United States v. Smith,* 198 F.3d 377, 382 (2d Cir.1999) (quoting *United States v. Naranjo,* 14 F.3d 145, 147 (2d Cir.1994)). The evidence at trial established that Speed and his co-conspirators planned the New Jersey robbery in the Southern District of New York, in a meeting with their fence, a

jewelry dealer who provided them with the addresses of customers or other people he knew had jewelry and other items of value. Speed and Riley transported the firearm en route through the Southern District of New York to and from the targeted New Jersey address. The Southern District of New York was therefore a "site of the crime" and was a suitable venue for trying the case, especially in view of the New York locus of the other charged crimes. *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir.2000). "Where venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 282, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (upholding venue in New Jersey for a firearm offense charge as part of a kidnapping that occurred through several states, in which the firearm was possessed and used only in Maryland); *see also United States v. Fabian*, 312 F.3d 550, 557 (2d Cir.2002) ("[A] defendant charged under 18 U.S.C. § 924(c)(1) may be charged in any district where the underlying crime took place, 'even if he did not use or carry the firearm in that district.'" (quoting *Saavedra*, 223 F.3d at 90)), *abrogated on other grounds by United States v. Parkes*, 497 F.3d 220 (2d Cir.2007).

■ *B. Post–Arrest Statements.* Speed argues that his post-arrest statements should have been suppressed as the product of a warrantless arrest without probable cause, and that the Nassau County police improperly used Speed's parole officer as a "stalking horse" to effectuate his arrest. The police had probable cause to arrest Speed without a warrant based on the following undisputed facts: (1) the police observed two black men running from the scene of the burglary; (2) the police apprehended one of the two (Speed's accomplice Darin Riley); (3) Riley had a mask he used to cover his face; (4) Riley possessed jewelry from the burglarized house; (5) the police saw the second suspect run from the house and escape over a backyard fence; (6) a police dog searching for the second suspect found a ski mask in the backyard; (7) the ski mask was later found to contain Speed's DNA; and (8) after they arrested Riley, the police learned that Speed and Riley were associates. Based on the "totality of the circumstances," the district court properly concluded that law enforcement officials had "sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990).

■ Speed contends that his parole officer was used as a "stalking horse" to conduct a home visit so that law enforcement officers could evade the Fourth Amendment's usual warrant and probable cause requirements for police searches and seizures. We rejected such a theory in *United States v. Reyes*, 283 F.3d 446, 463 (2d Cir.2002). Because Speed's parole officer was pursuing legitimate parole-related objectives in conducting the home visit, the law permitted his cooperation with law enforcement personnel. *See id.* at 464.

■ *C. The 1986 Robbery Conviction.* The district court admitted limited evidence about Speed's 1986 robbery conviction pursuant to Fed.R.Evid. 404(b), finding that certain details of the prior crime were relevant to prove Speed's identity as a participant in the later robberies, and that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. "The Second Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United*

States v. LaFlam, 369 F.3d 153, 156 (2d Cir.2004). The evidence disclosed that the 1986 robbery shared certain distinctive methods with the charged crimes, including using a ski mask, wearing dark clothes and gloves, and planning to steal the victim's vehicle for the getaway. See Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (ruling that evidence of defendant's prior robbery of a home was "circumstantially valuable" in proving he robbed a bank where on both occasions he wore a ski mask and carried a small pistol); United States v. Sappe, 898 F.2d 878, 880 (2d Cir.1990) (affirming admission of evidence of prior bank robberies where, as in the charged crime, defendant hid a gun in a newspaper and positioned it on the counter so that the teller could see the gun). The district court's determination that these similarities were sufficiently probative of identity to allow the evidence was not an abuse of discretion, see United States v. Pipola, 83 F.3d 556, 566 (2d Cir.1996), especially in view of the limiting instructions to the jury, see Dowling, 493 U.S. at 353, 110 S.Ct. 668. Any error was harmless in view of the other strong evidence of Speed's guilt, including the testimony of his co-conspirators and the victims, and his DNA on the ski mask found at one of the crime scenes. See United States v. Yousef, 327 F.3d 56, 122 (2d Cir.2003); United States v. Williams, 596 F.2d 44, 50 (2d Cir.1979).

■ *D. Cooperating Witness Testimony About Uncharged Crimes.* Speed challenges the admission of testimony by cooperating witness Riley that during the period of the racketeering conspiracy, Riley committed 167 burglaries and robberies, the great majority of them with Speed. Evidence of these other crimes committed by Speed and Riley together was probative of the existence of the charged racketeering enterprise and rack-

eteering conspiracy, and for that reason properly admitted despite its prejudicial impact. See United States v. Diaz, 176 F.3d 52, 79–80 (2d Cir.1999) (upholding the admission of testimony of uncharged drug dealing); United States v. Miller, 116 F.3d 641, 682 (2d Cir.1997) (upholding the admission of evidence of uncharged murders); United States v. Concepcion, 983 F.2d 369, 392 (2d Cir.1992). The Government complied with the district court's limiting instructions as to such testimony; and Speed lodged no objection during direct examination. To the extent prejudicial details about the uncharged crimes were revealed to the jury, the defense elicited such testimony on cross-examination. Speed "can hardly complain about the residual detrimental effects resulting from ... inquiry on cross-examination, since [he] elicited the testimony in the first place." United States v. Nersesian, 824 F.2d 1294, 1309 (2d Cir.1987).

■ *E. Jencks Act Claim.* Speed alleges that the Government willfully failed to create records of certain pre-trial interviews with cooperating witness Riley in order to avoid its obligations under the Jencks Act, see 18 U.S.C. § 3500, and that this violation requires a new trial. The Jencks Act does not require the Government to make written notes of its meetings with witnesses. United States v. Rodriguez, 496 F.3d 221, 224 (2d Cir.2007). It applies only to "statements that have been memorialized in some concrete form." Id. "The [Jencks Act] obligation has no application where ... no such memorialization has been created in the first place." Id.

■ *F. Sentencing.* Speed challenges the district court's Guidelines calculation with respect to the enhancement for "physical restraint" and "bodily injury," and the finding that Speed is a career offender. The enhancements did not "double-count" elements of the charged crimes

because "physical restraint" and "bodily injury" were not necessary elements of the charged crimes, *see United States v. Rosario,* 7 F.3d 319, 321 (2d Cir.1993) (per curiam), and because the Guidelines enhancements and the underlying penal statutes served separate and distinct purposes, *see United States v. Maloney,* 406 F.3d 149, 152 (2d Cir.2005). Speed was properly considered a career offender based on his two prior felony convictions because they were offenses that were separated by an intervening arrest, and therefore under the Guidelines are deemed unrelated. *See* U.S.S.G. § 4A1.2, commentary n. 3 (2000); *United States v. Boonphakdee,* 40 F.3d 538, 544 (2d Cir.1994) ("[W]hether an intervening arrest was present constitutes a *threshold* question that, if answered in the affirmative, precludes any further inquiry to determine whether prior sentences were imposed in related cases."). Thus, the district court did not err in calculating the Guidelines sentencing range.

Finding no merit in Speed's remaining arguments, the judgment of the district court is hereby **AFFIRMED.**