**UNITED STATES of America, Plaintiff,**

v.

**Johnny MORGAN, Defendant.**

No. 12–cr–223 (VM).

United States District Court, S.D. New York.

Signed Aug. 22, 2014.

Robert Wood Allen, Amy Garzon, Sidhardha Kamaraju, Jessica Rose Lonergan, U.S. Attorney's Office, SDNY, New York, NY, for Plaintiff.

David Jeremy Driscoll, Rita Marie Glavin, Michael Benjamin Weitman, Seward & Kissel LLP, William Joseph Stampur, Hurwitz Stampur & Roth, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendant Johnny Morgan ("Morgan") was indicted as a felon in possession of a firearm. In advance of a trial in this case scheduled for November 3, 2014, Morgan has filed a Motion to Compel the Production of Documents ("Motion to Compel," Dkt. No. 136). For the reasons set forth below, Morgan's Motion to Compel is DENIED.

### I. BACKGROUND

By Complaint dated March 2, 2012 (Dkt. No. 1), Morgan was charged with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g), and on March 15, 2012 a grand jury indicted Morgan on the same charge (Dkt. No. 5). The first trial in this case, which the Court held beginning September 30, 2013, resulted in a hung jury and mistrial. A retrial is scheduled for November 3, 2014.

Shortly prior to the first trial, Morgan raised concerns about the admissibility of evidence pertaining to low copy number ("LCN") DNA test results obtained from the firearm that was allegedly in Morgan's possession. In order to proceed with the trial as scheduled, on the morning of the first day of trial the Government agreed that it would not introduce any DNA evidence at trial and the parties agreed not to mention DNA evidence at any point in the trial. (See Tran-

script of September 30, 2013 Trial, at 2–11, United States v. Johnny Morgan, 12–cr–223.)

When the first trial ended in a hung jury and mistrial, Morgan revived the issue of admissibility of LCN DNA test results. Morgan moved, pursuant to Federal Rules of Evidence 104(a), 401, 402, 403, and 702, to exclude any evidence at trial of LCN DNA test results and requested a hearing under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. ("Motion to Exclude," Dkt. No. 66.) The Court granted the request for a Daubert hearing and held such hearing during a period of three days beginning January 29, 2014. The Motion to Exclude is currently under consideration.

One topic that arose at the Daubert hearing and in subsequent submissions from the parties was the entry of LCN DNA test results into a national database of the Federal Bureau of Investigations ("FBI") and, more generally, the position of the FBI concerning the reliability of LCN DNA test results. Morgan has highlighted the fact that the office prosecuting the case against him—the United States Attorney's Office for the Southern District of New York—is a part of the United States Department of Justice ("DOJ"), and that the FBI is "DOJ's investigative arm." (Motion to Compel, at 1.) Morgan contends that "DOJ's prosecution team has been on notice about Rule 16, Brady, and Giglio material in the possession of DOJ's forensic lab at the FBI that is contrary to the position taken by DOJ in this case (although DOJ has relied, in part, on the FBI to bolster its litigation position)." (Glavin Affidavit, Dkt. No. 137, ¶ 1.)

Morgan has now filed the instant Motion to Compel, in which he argues in essence that, as an arm of DOJ, the FBI as a whole is a member of the prosecution team and therefore any records in its possession reflecting its studies, considerations, and deliberations relating to its position on LCN DNA tests are subject to the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Giglio v. United States, 405 U.S. 150, 92

S.Ct. 763, 31 L.Ed.2d 104 (1972), and Rule 16 of the Federal Rules of Civil Procedure ("Rule 16"). (Def.'s Mem. in Supp. of Mot. to Compel the Production of Documents ("Def. Mem."), dated June 20, 2014, Dkt. No. 138, at 1–2.) Specifically, Morgan seeks an order compelling the DOJ to produce records maintained by the FBI regarding the reliability of LCN DNA testing for use in criminal casework,

> including but not limited to (i) the FBI's refusal to adopt the New York City Office of the Chief Medical Examiner's ("OCME") LCN DNA testing methodology or any other LCN DNA testing methodology for use in criminal casework, (ii) the FBI's wholesale rejection from the National DNA Indexing System of DNA profiles generated through LCN DNA testing, (iii) any documents relating to communications between representatives of OCME and the FBI regarding LCN DNA testing, and/or (iv) any documents relating to communications with the FBI Director's [Scientific Working Group for DNA Analysis Methods ("SWGDAM")] regarding LCN DNA testing[.]

(Motion to Compel, at 1.)

The Government filed its opposition to the Motion to Compel on July 25, 2014 ("Gov't Mem.," Dkt. No. 144) and Morgan filed his reply brief in further support of his Motion to Compel on August 11, 2014 ("Def. Reply," Dkt. No. 148). The Court has reviewed the parties' submissions listed above, as well as the letter from the Government dated August 13, 2014 (Dkt. No. 149) in which "the Government confirms that it has produced all documents in its possession concerning any communications between the FBI and the United States Attorney's Office for the Southern District of New York about LCN testing."

## II. *DISCUSSION*

■ The obligations of the Government to disclose information in this case are governed by Rule 16, *Brady,* and *Giglio.* Under Rule 16, the Government must produce documents that are in its possession and are "material to preparing the defense." Fed. R.Crim.P. 16(a)(1)(E). Under *Brady,* the Government must disclose favorable material evidence to a criminal defendant. *See Bra-*

*dy,* 373 U.S. at 86, 83 S.Ct. 1194; *United States v. Rivas,* 377 F.3d 195, 199 (2d Cir. 2004). Evidence is favorable if it is exculpatory or, under *Giglio,* if it could be used to impeach a key government witness. *See Giglio,* 405 U.S. at 154, 92 S.Ct. 763; *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *United States v. Mahaffy,* 693 F.3d 113, 127 (2d Cir.2012). The Government's obligations under *Brady* encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence favorable to the defense. *United States v. Rodriguez,* 496 F.3d 221, 226 (2d Cir.2007). "This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions." *Rodriguez,* 496 F.3d at 225.

■ The Government's duty to disclose extends to evidence "within the government's possession, custody or control." Fed. R.Crim.P. 16(a)(1)(E). The "prosecutor is presumed to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to [ ] others acting on the government's behalf in the case, including the police.'" *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) (*quoting Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *see also United States v. Payne,* 63 F.3d 1200, 1208 (2d Cir. 1995). However, such a duty to learn of favorable evidence is not limitless. *See United States v. Hutcher,* 622 F.2d 1083, 1088 (2d Cir.1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected."). It does not encompass every agency and individual within the federal government. *Avellino,* 136 F.3d at 255 ("[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor[.]"); *see also United States v. Morell,* 524 F.2d 550, 555 (2d Cir.1975) (holding that imputation is only proper when an agency can be considered "an arm of the prosecutor" and listing cases). Imposing "an unlimited duty on a prosecutor to inquire of other offices not working with the prosecu-

tor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Avellino,* 136 F.3d at 255 (*quoting United States v. Gambino,* 835 F.Supp. 74, 95 (E.D.N.Y.1993), *aff'd,* 59 F.3d 353 (2d Cir.1995)).

In the Second Circuit, whether the Government's disclosure duty extends to evidence maintained by another federal agency depends on whether the agency is "an arm of the prosecutor" or "part of the 'prosecution team.'" *United States v. Meregildo,* 920 F.Supp.2d 434, 440–41 (S.D.N.Y.2013) (*quoting United States v. Gil,* 297 F.3d 93, 106 (2d Cir.2002)); *see also Morell,* 524 F.2d at 555. The determination of whether an agency or individual is part of the prosecution team "depends on the level of interaction between the prosecutor and the agency or individual." *Meregildo,* 920 F.Supp.2d at 441; *see also United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993) (holding that reports made by FBI agents in the course of investigations apparently unrelated to the defendants' prosecutions should not be imputed); *Pina v. Henderson,* 752 F.2d 47, 49 (2d Cir.1985) (holding that a prosecutor's constructive knowledge did not extend to a parole officer who "did not work in conjunction with either the police or the prosecutor" but did extend to a police officer who was the investigating officer on the case). At the two clear extremes, "investigating case agents are part of the prosecution team but agents of a separate organization or sovereign who are uninvolved in the investigation are not." *Meregildo,* 920 F.Supp.2d at 441 (*citing United States v. Bin Laden,* 397 F.Supp.2d 465, 481 (S.D.N.Y.2005)).

There is no clear test to determine whether or not an individual or agency is a member of ·the prosecution team. *Id.; see also United States v. Zagari,* 111 F.3d 307, 320 n. 13 (2d Cir.1997) ("The extent to which knowledge may be imputed from one federal investigative agency to another for *Brady* purposes is as yet unclear."); *Bin Laden,* 397 F.Supp.2d at 484 (noting that the Second Circuit is "lacking a clearly articulated imputation test"); *Chandras v. McGinnis,* No. 01 Civ. 2519, 2002 WL 31946711, at *7 (E.D.N.Y. Nov. 13, 2002) ("[T]he exact point at which government agents can fairly be categorized as acting on behalf of the prosecution ... is uncertain."). Instead, whether an individual or agency is part of the prosecution team depends on the facts and circumstances of the case. A common-sense approach, however, is instructive. The most basic role of the prosecution team is to "perform investigative duties and make strategic decisions about the prosecution of the case." *Meregildo,* 920 F.Supp.2d at 441 (citations omitted); *see also Mahaffy,* 693 F.3d at 122 (finding SEC deposition transcripts to constitute *Brady* material where "[t]he prosecutions were products of close collaboration between the United States Attorney's Office and the SEC, and the government's trial teams each consisted of ostensibly experienced attorneys from both offices"); *United States v. Ghailani,* 687 F.Supp.2d 365, 372 (S.D.N.Y.2010) (finding DOJ officials covered under Rule 16 obligations because "[e]ven if those officials had no other involvement with [the] investigation or prosecution," they were involved in decisions "so important to the timing and progress of [the] case that participation in the decisionmaking render[ed] them] members of the prosecution team, at least to the extent of that participation."). Additionally, the prosecution team may "include individuals who are not strategic decision-makers [when those individuals] submit to the direction of the prosecutor and aid in the Government's investigation." *Meregildo,* 920 F.Supp.2d at 441 (citations omitted).

It is clear, however, that "the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. And, even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper." *Id.* (*citing United States v. Stewart,* 323 F.Supp.2d 606, 616–18 (S.D.N.Y.2004) (declining to impute knowledge of a forensic expert from the Secret Service lab who provided trial support for the prosecution and testified as an expert)).

In this case, the Government consulted individuals at the FBI for two specific purposes. The first set of discussions took place in January 2014, when the prosecutors

in this case sought to consult FBI forensic experts on the topic of LCN DNA testing prior to submitting its opposition to the Motion to Exclude. (*See* Def. Reply at 3). The second consultation took place in July 2014 when the prosecutors sought any FBI "insight" related to the instant Motion to Compel. (*See id.* at 5 (*quoting id.* Ex. 1, email from Amy Garzon, Assistant United States Attorney, United States Attorney's Office for the Southern District of New York, to Paula Wolff, Assistant General Counsel, Office of the General Counsel, FBI, et al. (July 15, 2014)).)

The Court has reviewed the email correspondence between the prosecutors and various FBI employees, which both Morgan and the Government attached as exhibits to their submissions concerning the Motion to Compel. (*See id.;* Gov't Opp'n, Ex. I.) The Court observes that the FBI employees whom the prosecutors consulted—which included scientists and an attorney—helped educate the prosecutors concerning the FBI's current practices concerning LCN DNA test results. For instance, one email related that although the FBI does not use LCN DNA test results for case work or in its National DNA Index System, "this does not mean, and should not be construed that it is not an accepted analysis technique within the relevant scientific community for Daubert purposes." (Def. Reply, Ex. 1, email from Paula Wolff to Amy Garzon et al. (July 16, 2014).) Another email stated that "SWGDAM has no stated position on LCN other than 1) its usual position of encouraging all laboratories to validate all methods before they use them and 2) its requirement for stochastic measures to be included in all conventional PCR systems to prevent low template DNA interpretation issues." (*Id.,* email from Anthony Onorato, Chief, Nuclear DNA Unit, FBI Laboratory, to Amy Garzon et al. (January 17, 2014).) The contents of these emails are general statements, not any specific analysis of the forensic evidence against Morgan or any facts specific to his case.

The Court has also reviewed the prosecutors' notes from telephone conversations with FBI employees on January 15, July 17, and July 18, 2014. The Court observes that the conversations covered, among other things, reasons why LCN test results are not entered into CODIS,[1] general statements about the FBI's approach to validating DNA testing protocols, and the differences between the LCN DNA testing methodology OCME uses and what the FBI has done or considered doing with respect to LCN testing. (*Id.*)

The Court characterizes the material in the email exchanges and telephone conversations as informative rather than decisive: The FBI employees educated the prosecutors about various facts that would help the prosecutors oppose the Motion to Exclude and the Motion to Compel, but they did not "make strategic decisions about the prosecution of the case." *See Meregildo,* 920 F.Supp.2d at 441. The prosecutors consulted with employees at the FBI for the sole purpose of seeking helpful information related to LCN DNA testing in general—not to gather information specific to the facts of Morgan's case. Furthermore, the Court notes that there is a significant amount of non-forensic evidence in this case; consulting with subject-matter experts on factual issues concerning motions related to one particular piece of evidence is a far cry from the cases Morgan's argument relies on in which another government agency joins the prosecutors in a "close collaboration" to build the case and decide trial strategies. *Mahaffy,* 693 F.3d at 122. There is no indication that the FBI employees here participated in any decisions whatsoever concerning the prosecution, let alone decisions "so important to the timing and progress of [the] case that participation in the decisionmaking render[ed them] members of the prosecution team." *Ghailani,* 687 F.Supp.2d at 372.

Furthermore, the FBI employees were far less involved with the prosecution of Morgan's case than was an expert witness in *United States v. Stewart,* where the individual was found to have "acted as an ordinary expert witness and not as part of the prose-

---

1.  CODIS is the acronym for the "Combined DNA Index System" and is the generic term used to describe the FBI's program of support for criminal justice DNA databases as well as the software used to run these databases. CODIS and NDIS Fact Sheet, http://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet (last visited August 19, 2014).

cution team." 433 F.3d at 298 (2d Cir.2006). In that case, the expert witness was a civilian employee of the United States Secret Service serving as its Laboratory Director and Chief Forensic Scientist. *Id.* at 295. The expert's role in the prosecution "was limited to matters concerning his area of expertise[.]" *Id.* at 298. He analyzed a document, explained to prosecutors the forensic tests that had been performed, discussed potential defense expert testimony, assisted prosecutors in developing cross-examination questions on technical aspects of the forensic tests at issue, participated in a mock examination as part of trial preparations, and testified at trial concerning the forensic tests that were performed and his conclusions from those tests. *Id.* The Second Circuit agreed with the district court that "[n]one of this suggests that [the expert] was in any way involved with the investigation or presentation of the case to the grand jury. He did not interview witnesses or gather facts, nor, with the exception of the [single document relevant to these forensic issues], did he review documents or develop prosecutorial strategy." *Id.* at 298–99. Moreover, the *Stewart* Court noted that "[t]he fact that [the expert] was a government employee does not alter [the] conclusion" that he "acted only in the capacity of an expert witness . . . and not as a fully functioning member of the prosecution team." *Id.* at 299. This conclusion "applies with even more force to the other laboratory employees whose participation was similarly limited in scope and less extensive than" the particular expert at issue. *Id.* "These circumstances, therefore, do not justify attributing to the prosecutors, as if it was their own, knowledge that [this expert] or other . . . personnel [in his lab] possessed." *Id.*

The facts in *Stewart* are analogous to those at issue in the instant case, but the FBI employees here are even further removed from the prosecution than was the expert in *Stewart*. The FBI employees here did not examine the forensic evidence at issue, but rather discussed generally the principles and limitations of LCN DNA testing and how the FBI uses it. The FBI employees consulted on factual matters relevant to the prosecutors' opposition briefs for the Motion to Exclude and Motion to Compel but did not play any role in the investigation or the presentation to the grand jury. They did not conduct any new research or perform any tests for this case. They had no involvement with any evidence beyond that of the LCN DNA test results. Therefore, the Court is not persuaded that the individual FBI employees acted as part of the prosecution team to an extent that would support imputation to the prosecutors of knowledge of evidence in possession of a much more extensive list of FBI officials and a far greater scope of information from FBI records and materials for the purposes of Rule 16, *Brady*, and *Giglio*.

Among the factors listed in *Meregildo* that would tend to demonstrate that an individual is part of the prosecution team is whether that individual "submit[s] to the direction of the prosecutor and aid[s] in the Government's investigation." 920 F.Supp.2d at 441. It strains credulity to suggest that FBI employees in this case "submit[ted] to the direction of the prosecutor" on the basis of their response to several emails and their willingness to hold a few isolated telephone conversations with the Government. However, it is plausible to state that these FBI employees "aid[ed] in the Government's investigation." *Id.* Even this statement is uncertain, considering that the typical understanding of "the Government's investigation" would encompass the case work leading up to charging a defendant and the piecing together of evidence to be presented at trial. Here, the Government secured LCN DNA test results as part of its "investigation" and subsequently consulted with the FBI employees only after Morgan moved to exclude that evidence. The preparation of legal briefs opposing motions does not, in general parlance, constitute part of the "investigation." Nonetheless, assuming for the sake of argument that the FBI employees did aid the Government in their investigation, it could perhaps be determined that these individual agents were part of the prosecution team for the limited purpose of the Government's preparation of a response to the Motion to Exclude and Motion to Compel.

However, the extent of any aid the FBI employees provided was limited to the content of their communications with the prosecutors. The Court is not persuaded that the

entire FBI, or even the entire Nuclear DNA Unit at the FBI Laboratory, thus became part of the prosecution team, and therefore, there is no reason to impute to prosecutors knowledge of any evidence in the possession of the FBI as a whole or the Nuclear DNA Unit relating to LCN DNA testing. There is no evidence that the individual FBI employees accessed the vault of evidence Morgan seeks relating to the FBI's stated views on LCN DNA testing. Instead, these agents provided the limited evidence that was relevant to the prosecutors' specific questions, and it is only to this limited extent that they could plausibly have constituted a part of the prosecution team. Consequently, the scope of any evidence which the Government may be obligated to turn over to Morgan under Rule 16, *Brady*, or *Giglio* is limited to the communications between the Government and FBI employees in question.

The Government has represented to the Court that it has produced "all documents in its possession concerning any communications between the FBI and the United States Attorney's Office for the Southern District of New York about LCN testing." (Dkt. No. 149.) The Government further states that it "is not in possession of additional FBI documents." (Gov't Opp'n at 15.) Furthermore, the Government contends that it "need not produce any documents in the FBI's possession." (*Id.*) The Court finds this position to be correct. The Court is persuaded that as a result of the Government's complete production of emails exchanged and notes taken during communications with the FBI, the Government has disposed of its disclosure duties.[2] To compel the Government to disclose any evidence in the possession of the FBI relating to its research on LCN DNA testing would be tantamount to deeming the entire FBI Laboratory to be members of the prosecution team. This position is unsupportable.

Morgan's argument that he lacks "essential facts" concerning why the FBI has publicly stated that LCN DNA testing techniques "have not yet demonstrated the necessary reliability for use in forensic casework" (Def. Reply at 7) does not change the analysis. To require the Government to disclose evidence concerning why the FBI has made policy decisions is tantamount to deeming upper-level FBI policymakers to be members of the prosecution team. Imputing to the Government knowledge of the details of how the FBI has made particular decisions concerning forensic evidence, just because the Government has consulted particular FBI employees generally on this matter, vastly oversteps the scope and rationale of Rule 16, *Brady*, and *Giglio*.

Morgan has a misguided view of the generosity of the Government's disclosure duties. Morgan seems to think that the Government's *Brady* obligation operates on the principle of "ask and you shall receive." He is mistaken. Morgan selectively quotes case law stating that "the heart of the holding in *Brady* is the prosecution's suppression of evidence, *in the face of defense counsel's request,* when the evidence is favorable to the accused" (Def. Reply at 7 (alteration in original) (*quoting United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982))) and language from Rule 16 stating that it "requires DOJ to

---

2. The Court notes that the Government's representation concerning the completeness of its production of evidence occurred subsequently to Morgan's Motion to Compel and Morgan's reply to the Government's opposition brief. As such, the Government's representation post-dated Morgan's allegations that the Government "may have more" Rule 16, *Brady*, or *Giglio* material in its custody, possession or control that it has "refused to turn over" and that "DOJ did not produce notes of any calls with the FBI scientists, despite several emails that suggest such a call may have taken place." (Def. Reply at 6.)

However, Morgan seeks an order compelling disclosure of a much greater scope of evidence than that which the Government represents it has disclosed—namely, any and all records in possession of the FBI concerning the reliability of LCN DNA testing. For that reason, the Court does not characterize Morgan's Motion to Compel as moot. Rather, the Court denies the Motion to Compel to the extent that it seeks disclosure of evidence in the possession of the FBI that extends beyond the communications between the FBI and the prosecutors in this case concerning LCN DNA testing. If, of course, it turns out that the Government possesses any further evidence concerning its communications with the specific FBI employees it consulted in connection with preparing its oppositions to the Motion to Exclude and the Motion to Compel, the Government is directed to turn over such communications to Morgan immediately.

produce documents '[u]pon a defendant's request' if they are 'material to preparing the defense'" (Def. Reply. at 8 (alteration in original) (*quoting* Fed.R.Crim.P. 16(a)(1)(E)(i))). However, Morgan did not include the context for these quotes, a central principle which addresses an important limitation on these duties: The Government is obligated to disclose—and indeed, common sense dictates that the Government is only *able* to disclose—only such evidence as is in the possession of the prosecutor, or is not in the prosecutor's possession but falls under the scope of what the prosecutor has the duty to learn, or is attributed to the prosecutor by imputation. The evidence Morgan seeks concerning FBI policy does not fall within any of these standards.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that defendant Johnny Morgan's Motion to Compel the Production of Documents (Dkt. No. 136) is **DENIED.**

**SO ORDERED.**