# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 75
The People &c.,
     Respondent,
   v.
Rong He,
     Appellant.

Paul Skip Laisure, for appellant.
Seth M. Lieberman, for respondent.

MEMORANDUM:

The order of the Appellate Division should be reversed and a new trial ordered.

In Brady v Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process

- 1 -

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" (373 US 83, 87 [1963]). We have since explained that "[t]he People, in their role as truth-seekers in criminal trials, have a 'broad obligation to disclose exculpatory evidence,' but a mere breach of this duty does not offend the defendant's due process rights unless all the 'components of a true Brady violation' are established" (People v Garrett, 23 NY3d 878, 884-885 [2014], quoting Strickler v Greene, 527 US 263, 281 [1999]). A successful Brady claim thus rests on a showing that "(1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Giuca, 33 NY3d 462, 473 [2019] [citation omitted]).

Here, the People failed to fulfill their "broad obligation" of disclosure under Brady by failing to provide defendant with meaningful access to favorable witnesses. The owner of the nightclub where the crime occurred told the police that he saw two people approach one of the victims and strike him with a beer bottle, and even identified someone other than defendant as one of those assailants. Another witness arguably corroborated this description when he called 911. According to a sprint report, the caller claimed that two men "stated that they were going to come back with a gun when leaving location." These accounts, if true, would have directly contradicted the People's theory of the case, and therefore access to the witnesses who made them was clearly favorable to the defense (see People v Garrett, 23 NY3d 878, 886 [2014]).

The People objected to defendant's pre-trial request for the direct disclosure of the witnesses' contact information, and instead offered to provide the witnesses with defense counsel's information. Yet this approach would not have provided defendant with adequate means for defense counsel to investigate those witnesses' statements. Furthermore, at the time of the request, the People did not bring forth any evidence that defendant presented a risk to the requested witnesses. Consequently, there was no apparent reason at that time for implementing protective measures or otherwise insulating the contact information from disclosure in the face of defendant's clear "right . . . to discover a potentially material witness" (People v Andre W., 44 NY2d 179, 186 [1978]; see also CPL 240.50 [1] [allowing the issuance of a protective order upon a showing of "good cause," including a "substantial risk of physical harm" or "intimidation"]). Accordingly, under the circumstances of this case, the People's refusal to disclose the contact information, or to provide any means for defense counsel to contact the witnesses other than through the prosecution itself, is tantamount to suppression of the requested information (see United States v Rodriguez, 496 F3d 221, 226 [2d Cir 2007] [explaining that "Brady information must be disclosed . . . in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in that trial"]).

The first two prongs of Brady being satisfied, our inquiry thus turns to whether the suppressed information was material. "In New York, the test of materiality where . . . the defendant has made a specific request for the evidence in question is whether there is a 'reasonable possibility' that the verdict would have been different if the evidence had been

disclosed" (People v McCray, 23 NY3d 193, 198 [2014], quoting People v Vilardi, 76 NY2d 67, 77 [1990] [emphasis added]). As noted, both witnesses' statements, if true, would have directly contradicted the People's theory of the case that defendant was the sole perpetrator. Although the People presented other evidence of defendant's guilt, the only witness who identified defendant at trial initially told the police that he did not see the perpetrator's face. Considering that the nightclub owner provided the police with the name of another possible assailant, and based on the other evidence presented at trial, it is clear that access at least to him could have allowed defendant to develop additional facts, which in turn could have aided him in establishing additional or alternative theories to support his defense. Given the substance of the nightclub owner's statements and the nature of the People's case, we cannot say—under our less demanding standard—that there was no "reasonable possibility" that the defense's investigation of the witnesses would not have affected the outcome of defendant's trial (McCray, 23 NY3d at 198; see also Andre W., 44 NY2d at 186-188).

Whether the causal connection between defendant's illegal arrest and his statements was sufficiently attenuated presents a mixed question of law and fact. Here, Supreme Court's determination of attenuation has record support, and is therefore beyond our powers of review (see People v King, 61 NY2d 969, 971 [1984]).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed and a new trial ordered, in a memorandum. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided October 17, 2019

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*