14-1862-cr
United States v. Stevenson

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2015
No. 14-1862-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ERIC STEVENSON,
*Defendant-Appellant,*

IGOR BELYANSKY, ROSTISLAV BELYANSKY, AKA Slava, IGOR
TSIMERMAN, DAVID BINMAN, SIGFREDO GONZALEZ,
*Defendants.*[*]

---

Appeal from the United States District Court
for the Southern District of New York.
No. 13-cr-161 — Loretta A. Preska, *Chief Judge.*

---

ARGUED: DECEMBER 16, 2015
DECIDED: AUGUST 17, 2016

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: RAGGI, WESLEY, and DRONEY, *Circuit Judges*.

Appeal from judgment and orders of the United States District Court for the Southern District of New York (Preska, *C.J.*) imposing a 36-month sentence of imprisonment, ordering forfeiture in the amount of $22,000, and designating Defendant's contributions to the New York State pension fund as a substitute asset for forfeiture. We **AFFIRM**.

RANDA D. MAHER, ESQ., Great Neck, New York, *for Appellant*.

PAUL M. KRIEGER, Assistant United States Attorney (Brian A. Jacobs, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

DRONEY, *Circuit Judge*:

Defendant Eric Stevenson, a former Member of the New York State Assembly representing a district in the Bronx, was convicted

after a jury trial of (1) conspiracy to commit honest services wire fraud, *see* 18 U.S.C. § 1349; (2) conspiracy to commit federal programs bribery and to violate the Travel Act, *see id*. § 371; (3) accepting bribes, *see id*. § 666(a)(1)(B); and (4) extortion under color of official right, *see id*. § 1951. Stevenson raises a number of issues on appeal, the majority of which we address in a summary order issued simultaneously with this opinion. Here, we address only Stevenson's challenges to (1) the sentence imposed, (2) the forfeiture order, and (3) the designation of substitute assets for forfeiture. We **AFFIRM.**

## BACKGROUND

From 2011 until 2013, Stevenson was a Member of the New York State Assembly as a representative of District 79 in the Bronx. In March 2012, federal law enforcement officers began investigating his interactions with a group of individuals (the "Businessmen") who were seeking assistance in opening and operating adult daycare

3

centers in the Bronx. For the next year, law enforcement officers worked with confidential informants to investigate Stevenson and others, and conducted audio and visual surveillance. Based on that investigation, Stevenson was indicted in the United States District Court for the Southern District of New York and arrested in April 2013. At his subsequent jury trial, the Government presented evidence that Stevenson accepted three bribes in 2012 and 2013 in the total amount of $22,000 in return for various actions to promote the Businessmen's adult daycare centers, including proposing legislation to the New York State Legislature that would have imposed a moratorium on new adult daycare centers, thus favoring the Businessmen. The jury found Stevenson guilty on all counts in January 2014.

On May 21, 2014, the district court sentenced Stevenson to an aggregate term of 36 months of imprisonment. The district court also entered a preliminary order of forfeiture in the amount of

$22,000, representing the amount of the bribes. The final judgment, including an order of forfeiture, was entered on May 23, 2014.

In December 2014, after it was determined by the district court that the forfeiture amount could not be satisfied, the district court entered a preliminary substitute order of forfeiture, pursuant to 21 U.S.C. § 853(p) and Federal Rule of Criminal Procedure 32.2, for Stevenson's "contributions, funds, benefits, rights to disbursements, or other property" held by the New York State and Local Retirement System. J.A. 1429. The final order of forfeiture of substitute assets was entered on July 30, 2015.

Stevenson appeals the 36–month sentence, arguing that the district court's calculation of his sentencing guidelines range was improper because two of the enhancements that were selected (for acting as a "public official," *see* U.S.S.G. § 2C1.1(a)(1), and as an "elected public official," *see* U.S.S.G. § 2C1.1(b)(3)) were impermissibly overlapping. He also argues that he was entitled to

have a jury decide the amount of forfeiture beyond a reasonable doubt, and that designating his interest in his retirement fund as a substitute asset was error as it is protected from such forfeiture by Article V of the New York State Constitution.  We disagree, and affirm the sentence and forfeiture orders.

**DISCUSSION**

**I.    Sentencing Challenges**

**a.  Enhancements**

Stevenson's pre-sentence report included a computation of his total offense level as 24, based on a base offense level of 14 and the inclusion of three enhancements that added 10 levels.[1]  Stevenson does not contest the factual bases for that computation, but argues that it included impermissible double counting due to its application of two separate increases in his offense level relating to his service as

---

[1] The base offense level for an offense involving bribery, when the defendant is a public official, is 14.  U.S.S.G. § 2C1.1(a)(1).  Stevenson's offense level was then increased by two because the offense involved more than one bribe, U.S.S.G. § 2C1.1(b)(1), by four because the value of the payments exceeded $10,000, but did not exceed $30,000, U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(C), and by four because the offense involved an elected public official, U.S.S.G. § 2C1.1(b)(3), for a total of 24.

6

a public official. The first of those increases was based on U.S.S.G. § 2C1.1(a)(1), which elevated Stevenson's base offense level from 12 to 14 because he was a "public official." The second was U.S.S.G. § 2C1.1(b)(3), which was used to assign Stevenson a 4-level enhancement due to his status as an "elected public official." Stevenson's argument is that both enhancements cannot be applied to a single defendant because each addresses the same harm. Stevenson did not make this objection before the district court, so we review this claim of procedural unreasonableness for plain error. *See United States v. Wernick*, 691 F.3d 108, 113 (2d Cir. 2012). A showing of plain error requires that:

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and brackets omitted).

There was no error here, much less plain error. "Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines." *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000) (internal quotation marks omitted). Nonetheless, "multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct." *Id*. The relevant question, then, is whether the two enhancements "serve identical purposes"—in which case applying both would be double counting and would demonstrate procedural irregularity—or whether they "address separate sentencing considerations." *Id*.

We conclude that the two enhancements do not serve identical purposes or address the same harm. While a betrayal of public trust

is a serious matter in any criminal case, it may be considered a greater harm when committed by one who has been elected to office and not simply appointed to a public position. As the Eleventh Circuit has noted,

> [b]ecause of the critical importance of representative self-government, a guideline that applies to any public official who betrays the public trust does not fully account for the harm that is inflicted when the trust that the official betrays was conferred on him in an election. Being a bribe-taking 'elected public official' is different from being a run-of-the-mill, bribe-taking, non-elected 'public official.'"

*United States v. White*, 663 F.3d 1207, 1217 (11th Cir. 2011) (some internal quotation marks and brackets omitted); *see also United States v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011) (rejecting claim that simultaneous application of U.S.S.G. § 2C1.1(a)(1) and § 2C1.1(b)(3) constitutes double counting); *United States v. Gilmore*, No. CR 10-200-02, 2012 WL 1377625, at *6 (W.D. La. Apr. 18, 2012) (noting that the term "public official is construed broadly to cover persons who are not even employees of a local or state government," and finding no

double counting when both U.S.S.G. § 2C1.1(a)(1) and § 2C1.1(b)(3) are applied).  Thus, we conclude that the application of sentencing enhancements under both U.S.S.G. §§ 2C1.1(a)(1) and 2C1.1(b)(3) did not here constitute double counting.

**b.  Disparity**

Stevenson also argues that his sentence was procedurally unreasonable because it reflected an impermissible disparity under 18 U.S.C. § 3553(a)(6) between the sentence received by  Stevenson and those of his co-defendants (the Businessmen: Igor Belyansky, Slava Belyansky, Igor Tsimerman, and David Binman).

We also reject this argument.  18 U.S.C. § 3553(a)(6) requires that a sentencing court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," not that it consider the disparities between co-defendants.  *See United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) ("We have held that section 3553(a)(6) requires a district court to consider nationwide sentence disparities,

but does not require a district court to consider disparities between co-defendants.").

Even so, the district court here did in fact consider the sentences of the co-defendants when explaining Stevenson's sentence: the other defendants had lower guideline ranges, pled guilty, and accepted responsibility for their conduct. As the district court also noted, there were additional considerations in sentencing Stevenson as an elected official who was bribed that did not apply to the other defendants, the bribing parties who had no governmental positions: "to compare the sentences of the bribing parties to the sentence of the public official who was bribed is [to compare] apples and oranges." J.A. 1356. The district court did not commit procedural error in its computation and application of the sentencing guidelines.

**II.    Forfeiture**

    **a.  *Libretti v. United States***

At Stevenson's sentencing, the district court issued an order of forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) [2] and 28 U.S.C. § 2461(c) in the amount of $22,000 based on its conclusion regarding "the amount of proceeds traceable to the commission of the offenses charged in . . . the Indictment." J.A. 1345–48.  On appeal, Stevenson argues that this was improper because, under the Sixth Amendment, the facts relevant to the determination of the amount of a criminal forfeiture must be found by a jury beyond a reasonable doubt.[3]

In 1995, the Supreme Court addressed this issue directly, holding that there is no Sixth Amendment right to a jury

---

[2] "While § 981(a)(1)(C) is a civil forfeiture provision, it has been integrated into criminal proceedings via 28 U.S.C. § 2461(c)." *United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012).  28 U.S.C. § 2461(c) provides that the procedures of 21 U.S.C. § 853 apply to such proceedings.

[3] Stevenson also argues on appeal that the evidence failed to establish beyond a reasonable doubt that the proceeds traceable to him for the offenses he was convicted of amounted to $22,000. However, the amount of a forfeiture order must be supported "only by a preponderance of the evidence," and "the district court's factual findings [are reviewed] for clear error." *United States v. Gaskin*, 364 F.3d 438, 461–62 (2d Cir. 2004).  Stevenson has pointed us to no such clear error here.

determination in a criminal forfeiture proceeding. *See Libretti v. United States*, 516 U.S. 29, 48–49 (1995). Stevenson acknowledges *Libretti*, but argues that more recent Supreme Court decisions have served to effectively overrule it. Specifically, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Twelve years later, the Supreme Court applied this principle to the calculation of a maximum criminal fine as part of a sentence, holding that the amount of a fine, "like the maximum term of imprisonment or eligibility for the death penalty, is often calculated by reference to particular facts. . . . In all such cases, requiring juries to find beyond a reasonable doubt facts that determine the fine's maximum amount is necessary to implement *Apprendi's* 'animating principle' . . . ." *S. Union Co. v. United States*, 132 S. Ct. 2344, 2350, 51 (2012) (quoting *Oregon v. Ice*, 555 U.S. 160,

168 (2009)). And one year after that, the Supreme Court extended the principle further to facts affecting a mandatory minimum sentence of incarceration. *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013).

After *Apprendi*, but before *Southern Union* or *Alleyne*, we confirmed that *Libretti* remained good law. *United States v. Fruchter*, 411 F.3d 377, 380–82 (2d Cir. 2005). The Supreme Court has explained that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Consequently, faced in *Fruchter* with an argument that "*Apprendi* and its progeny have so undercut *Libretti* as to have overruled it sub silentio," we held that "*Libretti* remains the law until the Supreme Court expressly overturns it." *Fruchter*, 411

F.3d at 381. In finding that neither *Apprendi* nor the other Supreme Court cases urged upon us as having overturned *Libretti*[4] had done so, we pointed to "the distinction between criminal forfeiture proceedings and determinate sentencing regimes," explaining that *Apprendi* and the later cases applying it "prohibit a judicial increase in punishment beyond a previously specified range; in criminal forfeiture, there is no such previously specified range." *Id*. at 382, 383. Calling criminal forfeiture "a different animal from determinate sentencing," we concluded that "*Libretti* remains the determinative decision." *Id*. at 383.

Stevenson argues that the Supreme Court has since expressly overruled *Libretti* in *Southern Union* and *Alleyne*. We disagree.

The argument that *Southern Union* expressly overruled *Libretti* fails because—just like the decisions that we considered in *Fruchter*—*Southern Union* also involved a determinate sentencing

---

[4] *United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004).

15

scheme. There, the statute through which the defendant corporation was convicted of environmental violations provided a maximum fine of $50,000 for each day of violation. *Southern Union*, 132 S. Ct. at 2349. The jury was instructed only to find a violation, but not the number of days the violation occurred. *Id*. However, the district court imposed a fine of $38.1 million, based on its calculation that the violations occurred over a period of 762 days. *Id*. The Supreme Court concluded that such a fine was not permitted based on the jury's verdict, as the only violation that the jury necessarily found was for one day. *Id*.

In so extending the *Apprendi* holding to criminal fines, the Supreme Court noted that *Apprendi* required submission to a jury of "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum*," *id*. at 2350 (emphasis added) (quoting *Apprendi*, 530 U.S., at 490), concluding therefore that there could be no "*Apprendi* violation where no maximum is prescribed," *id*. at 2353.

16

For all of the reasons we explained in *Fruchter* concerning the differences between determinate sentencing and criminal forfeiture, it cannot therefore be said that *Southern Union* overruled *Libretti*.

Nor did the Supreme Court in *Alleyne* expressly overrule *Libretti*. There, it concluded that 18 U.S.C. § 924(c)—which provides increased mandatory minimum periods of incarceration based on whether a firearm involved in a crime of violence or drug trafficking crime was carried, brandished, or discharged—required a jury finding for the increased punishments. It held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155. It did not address forfeiture and its different characteristics.

Whether it is mandatory minimums or statutory maximums, those aspects of fixing the penalties for determinate sentencing schemes are meaningfully different than those establishing the amount of forfeiture in applying the Sixth Amendment right to a

17

jury trial. The calculation of the amount of forfeiture is not subject to any statutory thresholds that increase penalties—whether they be "floor[s]" or "ceiling[s]," *see id*. at 2160—and remains within the province of the sentencing court. *Libretti* and *Fruchter* remain controlling precedent, and we therefore decline to reverse the district court's forfeiture order.

### b. Pension Plan

The district court issued an order following sentencing for the forfeiture of $22,000 in proceeds obtained from Stevenson's offenses, *see* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); *see also* 21 U.S.C. § 853(a), and later identified as a substitute asset for forfeiture "[a]ny and all contributions, funds, benefits, rights to disbursements, or other property held on behalf of, or distributed to, ERIC STEVENSON, by the New York State and Local Retirement System, . . . and all property traceable thereto," J.A. 1429. These contributions were made by Stevenson while he was a Member of the Assembly. Stevenson did not serve in the State Assembly long

18

enough to become a vested member of the pension plan entitled to pension distributions, but he is entitled to a refund of the contributions that he made. See N.Y. Retire. & Soc. Sec. Law §§ 516, 517. In response to an inquiry made by this Court at the conclusion of oral argument, the Government made a submission explaining that it "intend[ed] to serve the Order on the New York State and Local Retirement System ("NYSLRS") and request that the NYSLRS pay over the pension contributions" of Stevenson. Dkt. No. 93.

Stevenson argues that identifying his pension plan contributions as a substitute asset and permitting seizure by the Government was error as those contributions are protected by Article V, Section 7 of the New York State Constitution, which states that such a plan's benefits "shall not be diminished or impaired." We disagree.

The Supremacy Clause of the U.S. Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the

19

Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Articles of the New York Constitution, as state law, are therefore preempted if they are inconsistent with federal law. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) ("[S]tate law is . . . preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law.").

Here, there is a conflict between New York law, providing that the pension fund is not to be "diminished or impaired," and federal law, which authorizes forfeiture "irrespective of any provision of State law," of any property derived from the crime of conviction, 21 U.S.C. § 853(a), and, where such property cannot be located or has been transferred, of "any other property of the defendant" in the same amount, *id*. at § 853(p)(1)-(2). Therefore, Article V, Section 7 of the New York State Constitution is preempted to the extent that it would prevent forfeiture of Stevenson's

20

contributions to or benefits from a state pension or retirement system up to $22,000, the amount ordered forfeited.

This conclusion is consistent with that of a number of our sister circuits that have similarly held that various provisions of state law are preempted by federal forfeiture law. *See United States v. Fleet*, 498 F.3d 1225, 1232 (11th Cir. 2007) ("[W]e hold that where the forfeiture of substitute property is concerned, 21 U.S.C. § 853(p) preempts Florida's homestead exemption and tenancy by the entireties laws."); *United States v. Wagoner Cty. Real Estate*, 278 F.3d 1091, 1097 (10th Cir. 2002) ("[W]e hold that federal preemption of the Oklahoma homestead exemptions is necessary to carry out the Congressional intent underlying § 881(a)(7) and to maintain uniformity in federal forfeiture law."); *United States v. Bollin*, 264 F.3d 391, 399 (4th Cir. 2001) ("[P]ursuant to the Supremacy Clause, federal forfeiture law supersedes the garnishment protections that Georgia state law provides for funds in an individual retirement

account."); *United States v. Curtis*, 965 F.2d 610, 616 (8th Cir. 1992) ("[T]he federal forfeiture statute, § 853(a), clearly superseded the homestead exemption set forth in Iowa Code § 561.16.").

\* \* \*

For the foregoing reasons, we **AFFIRM** the judgment, including the sentence imposed, the forfeiture order, and the order identifying substitute assets by the district court.