*United States v. Carr*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand eighteen.

Present:
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

---

UNITED STATES,

> *Appellee*,

v.                                                                          17-2194

HAROLD CARR,

> *Defendant-Appellant*.

---

For Defendant-Appellant:          JEFFREY R. PARRY, ESQ., Fayetteville, NY.

For Plaintiff-Appellee:          CARINA H. SCHOENBERGER, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of

New York (Mordue, *S.J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Harold Carr ("Carr") appeals from a sentence entered on July 6, 2017, in the United States District Court for the Northern District of New York (Mordue, *S.J.*). Carr admitted to two violations of the conditions of his supervised release and was sentenced to 60 months' imprisonment, to be followed by 36 months of supervised release. This sentence was above the Guidelines range of 30 to 37 months' imprisonment. Carr raises two issues on appeal. First, he argues that the district court abused its discretion by accepting Carr's admissions to the supervised-release violations as knowing and voluntary. App. Br. 4–9. Second, he argues for the first time that the district court erred by not sufficiently explaining its reasons for imposing an above-Guidelines sentence. App. Br. 9–15. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.[1]

We review a district court's decisions related to revocation proceedings under Federal Rule of Criminal Procedure 32.1 for abuse of discretion. *United States v. Carthen*, 681 F.3d 94, 100 (2d

---

[1] The government previously moved for this Court to remand to allow the district court to address whether a conflict of interest exists between Carr and his attorney. App. Dkt. No. 40. We denied that motion. App. Dkt. No. 68. The government maintains that remand may be appropriate, based on what it perceives as a discrepancy between Carr's statements to the district court on the one hand, and Carr's attorney's statements to the district court and this Court on the other. However, we conclude that there is no discrepancy. While some of Carr's statements below suggested that he had been told by his attorney that he *would* receive a 30-month sentence, Carr also explicitly said that counsel had told him "the Judge can do whatever he wants," which was consistent with the statement made by counsel that he had "never said to any client ever in [his] years in federal practice what a judge might do." A-42, 46. Moreover, Carr submitted an affidavit to this Court affirming that he knows what a conflict of interest is, that he has read the brief submitted on his behalf, that he is "in agreement with facts, circumstances, and argument contained in the Brief," and that "[n]o conflict of interest exists" between Carr and his attorney. App. Dkt. No. 59. Carr's brief, in turn, represents that before admitting to the violations, Carr "was informed of the Court's position that it would probably tender a within the Guidelines sentence," and that Carr acknowledged in the district court "that he was informed that the Court had not made a commitment." App. Br. 3–4. For these reasons, we do not reconsider our prior decision not to remand on this issue.

Cir. 2012). "[A] district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002) (internal citation omitted).

Where a defendant raises an unpreserved procedural objection for the first time on appeal, we review the district court's decision for plain error. *See United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008). We have the discretion to correct such an error if the defendant demonstrates that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Stevenson*, 834 F.3d 80, 83 (2d Cir. 2016) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Reversal for plain error "should be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (citation omitted).

Carr's first argument is that his admissions were involuntary because they were premised on his (mistaken) belief that Judge Mordue would impose only 30 months of imprisonment for Carr's violations. But even in the context of a guilty plea, where a defendant receives protections not required in the revocation context, a defendant's belief "as to what his sentence might be at the time he entered his guilty plea" is not sufficient to render that plea involuntary if he does not later receive that sentence. *United States ex rel. LaFay v. Fritz*, 455 F.2d 297, 301–03 (2d Cir. 1973). Indeed, in the guilty-plea context, a defendant is entitled to know the maximum prison term

3

possible but is not "entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence." *See United States v. Sweeney*, 878 F.2d 68, 69–70 (2d Cir. 1989).

Carr knew what the statutory maximum was and that receiving such a sentence was a possibility. In fact, in entering into a written plea agreement in connection with his original convictions for conspiracy to possess with intent to distribute cocaine and possession of a firearm during and in relation to a drug trafficking crime, Carr acknowledged that if he violated any of the terms and conditions of supervised release following his initial prison sentence, "he [could] be sentenced to up to 5 years imprisonment." GA-21. Therefore, when Carr *was* later accused of violating those conditions, he had already been made aware of the potential consequences of admitting to the allegations against him. Moreover, in January 2017, Carr was notified of the allegations against him, as well as that a possible consequence was reimprisonment. He had months to consider whether he should admit the violations, given those consequences, ultimately deciding to do so in July 2017 once he "received the sum of the evidence against him." A-37. Further, at the revocation proceedings, the government—within earshot of Carr—explicitly requested that Carr be sentenced to the statutory maximum. Applying even the more rigorous standard of review that governs for Rule 11 purposes, then, the record in no way supports Carr's contention, today, that his admissions were not voluntary, even assuming that he hoped to receive only 30 months in prison. We thus conclude that in the less-protective Rule 32.1 context at issue here, Judge Mordue did not abuse his discretion by accepting the admissions as voluntary.

Carr's second argument is that the district court erred by not sufficiently explaining its reasons for imposing an above-Guidelines sentence. Carr did not object to Judge Mordue's statement of reasons for the above-Guidelines sentence, and so we review the district court's explanation for plain error. *See Verkhoglyad*, 516 F.3d at 128.

Sentencing for supervised-release violations is governed by Chapter 7 of the U.S. Sentencing Guidelines, which provides only "policy statements" to guide judges, rather than formal guidelines, in large part due to "a lack of empirical data and national experience" with such violations. *Id.* (citing U.S.S.G. ch. 7, pt. A, intro cmt. n.1). This Court has determined that a district court's "statement of its reasons for going beyond non-binding *policy* statements in imposing a sentence after revoking a defendant's supervised release term need not be as specific as has been required when courts departed from *guidelines* that were, before *Booker*, considered to be mandatory." *United States v. Lewis*, 424 F.3d 239, 245 (2d Cir. 2005). Thus, because "policy statements are merely advisory and non-binding, . . . the district court need not make the explicit, detailed findings required when it departs upward from a binding guideline." *See United States v. Pelensky*, 129 F.3d 63, 69 (2d Cir. 1997) (internal quotation marks omitted). All that is required is that a district court "sufficiently explain its reasoning so that the parties, the public, and a reviewing court can understand the justification for the sentence." *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015).

Here, even though he was not required to do so in detail, Judge Mordue in fact did identify explicit reasons for his upward departure from the Guidelines range. He noted that Carr had previous criminal convictions for selling drugs, often while possessing a firearm, that Carr's supervised-release violations stemmed from the same type of conduct, and that it was "clear" that Carr was "dealing drugs again." A-38, A-43. Moreover, Chapter 7 of the Guidelines provides that the "primary goal of a revocation sentence" is to "account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision." *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007) (citing U.S.S.G. ch. 7, pt. A.3(b)). Consistent with this goal, Judge Mordue found significant the "serious betrayal of trust" that Carr had committed by violating his conditions

5

of release. A-38–39. All these reasons—which Judge Mordue stated at sentencing and in his written judgment—were sufficient to let "the parties, the public, and a reviewing court . . . understand the justification for the sentence." *Aldeen*, 792 F.3d at 255. Thus, far from committing "plain error" that affected Carr's substantial rights or impaired the judicial proceedings, we conclude that Judge Mordue committed no error.

*    *    *

We have considered Carr's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk