22-333(L)
*U.S. v. Melendez-Rojas*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand twenty-four.

**PRESENT:**
> **GERARD E. LYNCH,**
> **ALISON J. NATHAN,**
> **SARAH A. L. MERRIAM,**
> > *Circuit Judges.*

_____

**United States of America,**

> *Appellee,*

> v.

**Rosalio Melendez-Rojas, AKA Leonel, AKA Wacho, AKA El Guacho; Francisco**

Nos. 22-333(L),
22-358(con),
22-386(con),
22-397(con),
22-399(con)

**Melendez-Perez, AKA Paco, AKA El Mojarra; Abel Romero-Melendez, AKA Borrega, AKA La Borrega; Jose Miguel Melendez-Rojas, AKA Gueramex, AKA Jose Melendez Perez; Jose Osvaldo Melendez-Rojas,**

*Defendants–Appellants*,

**Fabian Reyes-Rojas,**

*Defendant.*[1]

_____

**FOR DEFENDANT-APPELLANT ROSALIO MELENDEZ-ROJAS:** — JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY.

**FOR DEFENDANT-APPELLANT FRANCISCO MELENDEZ-PEREZ:** — DEVIN MCLAUGHLIN, Langrock Sperry & Wool, LLP, Middlebury, VT.

**FOR DEFENDANT-APPELLANT ABEL ROMERO-MELENDEZ:** — MICHAEL O. HUESTON (Jacqueline E. Cistaro, Law Offices of Jacqueline E. Cistaro, New York, NY, *on the brief*), Brooklyn, NY.

**FOR DEFENDANT-APPELLANT JOSE MIGUEL MELENDEZ-ROJAS:** — SUSAN G. KELLMAN, Law Offices of Susan G. Kellman, Brooklyn, NY.

---

[1] The Clerk of the Court is directed to amend the caption as set forth above.

**FOR DEFENDANT-APPELLANT**
**JOSE OSVALDO MELENDEZ-ROJAS:**     MURRAY E. SINGER, Port Washington, NY.

**FOR APPELLEE:**     GILLIAN KASSNER (James Simmons, David C. James, Jo Ann M. Navickas, *on the brief*) Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

\*     \*     \*

Appeals from judgments of the United States District Court for the Eastern District of New York (Ross, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Defendants-Appellants Rosalio Melendez-Rojas (Rosalio), Francisco Melendez-Perez (Francisco), Abel Romero-Melendez (Abel), Jose Miguel Melendez-Rojas (Miguel), and Jose Osvaldo Melendez-Rojas (Osvaldo) each appeal their convictions stemming from their participation in a multi-year,

3

international sex-trafficking organization, referred to here as the "Melendez-Rojas Trafficking Organization" (MRTO).[2]  As part of the MRTO, Defendants smuggled young women, including minors, from Mexico into the United States.  Once the victims were in the United States, Defendants used fraud, brutal beatings, threats of violence, and psychological manipulation to force the victims into prostitution, an arrangement from which Defendants benefitted financially.[3]

After a two-week trial, the jury rendered a guilty verdict against all Defendants on all Counts in which they were charged, and the district court subsequently sentenced each Defendant.  In the present appeals, Defendants raise numerous challenges to the district court's rulings during and after trial, to their convictions, and, in two cases, to their sentences.  We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision.

---

[2] To avoid confusion, we refer to Defendants by their first or middle names, given that several share the same or similar names.

[3] The victims of the MRTO were identified in the superseding indictment as Jane Does #1–6. The Jane Does testified at trial and were identified using only their first names: Diana, Veronica, Fabiola, Maria Rosalba (Maria), Delia, and Daisy.

## I.  Sufficiency of the Evidence

Miguel, Francisco, Abel, and Rosalio each challenge the sufficiency of the evidence underlying their convictions.[4]  Miguel, Francisco, and Abel argue that there was insufficient evidence to support certain of their convictions for alien smuggling under 8 U.S.C. § 1324; transportation of minors to engage in prostitution under 18 U.S.C. § 2423(a) and (e); and substantive sex trafficking under 18 U.S.C. §§ 1591 and 1594(c).  Rosalio contends that there was insufficient evidence to support his money laundering conspiracy conviction pursuant to 18 U.S.C. § 1956(h).

Sufficiency of the evidence challenges are reviewed "*de novo*, but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (quotation marks omitted).  "[W]e must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the

---

[4] After the jury rendered its verdict, Francisco, Abel, and Rosalio each moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  The district court denied each motion.

5

weight of the evidence." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (quotation marks omitted). Moreover, "[w]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015) (quotation marks omitted).

## A. Francisco

Francisco challenges the sufficiency of the evidence underlying his convictions for Count 8, aiding and abetting the sex trafficking of Maria, and Count 9, aiding and abetting the smuggling of Maria. Francisco asserts that he took no affirmative act to aid his uncle, Osvaldo, in smuggling and sex trafficking Maria. We disagree.

Evidence at trial established that Francisco assisted Osvaldo in recruiting Maria. He was present when Osvaldo and Maria began dating and went with them to Maria's parents' house to convince them that she was safe while living with Osvaldo, thereby lending credence to Osvaldo's false promise that he and his family would take care of Maria. *See United States v. Delgado*, 972 F.3d 63, 76 (2d Cir. 2020), *as amended* (Sept. 1, 2020) (noting that accomplice liability is satisfied

6

where "a defendant's presence helps or positively encourages the commission of a crime") (cleaned up).

While Maria lived at Osvaldo's family home in Mexico, Francisco also "watched over" Maria when Osvaldo was absent, and would tell Osvaldo "everything that [Maria] did." Rosalio App'x at 449. Maria testified that, while she lived with Osvaldo, he abused her, forced her to have an abortion, and forced her to work as a prostitute in Mexico City. Testimony at trial also demonstrated that Francisco knew of the plan to cross the border with Maria, as he accompanied her with his own victim, Delia, on at least two attempted crossings. A reasonable jury could conclude that this evidence established that Francisco knew Osvaldo recruited, harbored, maintained, and transported Maria and that he affirmatively participated in her trafficking by, at the very least, harboring and surveilling her at the home prior to the planned border crossing.

Francisco additionally asserts that he did not aid and abet Osvaldo's smuggling offense of Maria in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). Francisco's argument rests on the mistaken impression that § 1324(a)(1)(A)(iv) requires a successful border crossing by the smuggled alien, and therefore to aid and abet the

7

offense, his actions must have furthered such a crossing. However, § 1324(a)(1)(A)(iv) only requires Francisco to have aided and abetted Osvaldo's efforts to "encourage[] or induce[]" an alien's illegal entry, and is satisfied regardless of whether that contemplated entry is accomplished or even attempted. 8 U.S.C. § 1324(a)(1)(A)(iv) (providing for liability where the defendant acts while "knowing or in reckless disregard of the fact that such . . . entry . . . is or *will be* in violation of law") (emphasis added).

As discussed above, Francisco attempted to cross the border with Maria and Delia on at least two occasions, and Delia testified that on their first attempt to cross the border, Francisco instructed her not to answer any questions. A rational juror could infer from Francisco's presence, and his affirmative instructions, that he knew of and contributed to Osvaldo's "encourage[ment] or induce[ment]" of Maria to illegally enter the United States. Francisco's active participation in the recruitment of Maria in Mexico and surveillance of her activities on behalf of Osvaldo prior to the border crossing attempts further demonstrates that he assisted Osvaldo, by, at minimum, keeping her within Osvaldo's grasp. The

8

evidence was therefore sufficient to convict Francisco of smuggling and sex trafficking Maria.

**B.     Abel**

Abel argues that the evidence was insufficient to convict him of Count 1, alien smuggling conspiracy; Count 2, conspiracy to transport minors for prostitution; Count 3, sex trafficking conspiracy; and Count 4, sex trafficking of a minor, Diana.

As an initial matter, much of Abel's argument about the sufficiency of the evidence relates to Diana's testimony, which he asserts was inconsistent and noncredible as a matter of law. But as the district court recognized, Diana's inconsistencies were raised during cross examination and defense counsel's closing argument. Moreover, the Government redirected Diana, asking her about the inconsistencies in her testimony. "It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (quotation marks omitted). We agree with the district court that

9

Diana's testimony was not incredible as a matter of law and that a reasonable jury could, and evidently did, believe that testimony.

As Abel concedes, Diana's testimony was sufficient to convict him on each challenged Count. Diana testified that Abel and Miguel attempted to cross the border with her multiple times when she was sixteen. Miguel obtained false identification for Diana to appear older, and Abel required Diana to rehearse her false birthday and corrected her when she was wrong. The Government's border crossing exhibits corroborate that Abel tried to cross the U.S.-Mexico border three times with Diana. Diana's testimony also established that Abel knew that she was forced to work in prostitution and that she suffered severe abuse. Diana also described how Abel encouraged the trafficking by discussing plans to relocate the operation to North Carolina.

Testimony and physical evidence also established that at least two other women worked as prostitutes for Abel. Witnesses testified that these women gave Abel their earnings, and that Abel participated with those earnings in a joint savings club with his co-defendants that pooled and distributed the prostitution proceeds of the MRTO's victims. Therefore, a rational jury could conclude that

10

Abel actively participated in the charged alien smuggling conspiracy, conspiracy to transport minors for prostitution, sex trafficking conspiracy, and sex trafficking of Diana.

## C.    Miguel

Miguel argues that the evidence was insufficient to convict him of aiding and abetting the sex trafficking, Count 10; transportation of a minor to engage in prostitution, Count 11; and smuggling of Delia, a minor, Count 12.  Specifically, Miguel asserts that the evidence demonstrates only his mere presence as a passenger in a taxi that transported Delia from the Bronx to Queens, which he claims was insufficient for any rational juror to convict him.  We disagree.

The evidence at trial demonstrated that Miguel's brother, Osvaldo, his sister, Guadalupe, and Francisco participated in arranging Delia's transportation across the border by securing identification documents and telling Delia what to say if confronted by the authorities.  After two unsuccessful attempts, Delia successfully crossed the border with Gudalupe and Francisco.  From the border, the three traveled to the Bronx, where one of the smugglers transporting them called "one of the brothers Melendez" to demand additional payment for bringing

11

Delia to the East Coast. Rosalio App'x at 686–87. Shortly thereafter, Miguel and Rosalio arrived, one of the brothers paid the fee, and the group left together in a taxi. Although Delia did not testify that Miguel paid those drivers, the jury could reasonably infer that Miguel was not merely present but rather actively aided the crime. He and Rosalio came to the Bronx to transport Delia, who had been recently smuggled across the border, to the apartment in Queens from which the MRTO operated, in response to a call demanding additional payment for her smuggling. The inference of active participation is further strengthened by Miguel's extensive participation in the sex-trafficking conspiracy and the fact that Rosalio had provided similar aid to Miguel when Miguel transported his victim, Diana. As with Delia, Rosalio picked up Miguel and Diana upon their arrival to New York and then transported Diana, with Miguel, to the Queens apartment.

Delia also testified to Miguel's participation with the other Defendants in the savings club, into which the proceeds from her prostitution were deposited. Contrary to his sole argument, Miguel was not merely present. He played an active role in the final leg of Delia's transportation, and he personally benefitted financially from his participation in the venture. As a result, sufficient evidence

12

was presented to convict Miguel, at least as an aider and abettor, of Counts 10, 11, and 12. *See Delgado*, 972 F.3d at 74 (A defendant does not need to "provide more than a minimal amount of aid to qualify as an aider and abettor" (quotation marks omitted)).

### D. Rosalio

Rosalio asserts that there is insufficient evidence to support his money laundering conviction because the government failed to introduce evidence that the wire transfer transactions at issue were designed either to promote unlawful activity or to conceal the proceeds of unlawful activity as required by 18 U.S.C. § 1956(a)(1). We disagree. At minimum, there is sufficient evidence upon which a reasonable jury could find that Rosalio conspired with others to use the prostitution proceeds to further the interests of the MRTO, when he used the funds garnered from the prostitution to fund additional attempts to transport victims into the United States for commercial sex acts.

Delia and Maria both testified that Rosalio paid the smuggling fees for them to cross the border into the United States. Daisy also testified that, in August 2011, Rosalio wired money to his co-defendant Fabian Reyes-Rojas to cover her travel

expenses to cross the border with Fabian.[5] Wire transfer records confirmed that Rosalio transferred funds to Fabian in August 2011. Moreover, testimony demonstrated that Defendants used the obligation of repaying the border-crossing fees to coerce the victims into prostitution. Finally, Veronica testified that Rosalio did not have a job or source of income other than the proceeds garnered from the victims' prostitution, which reasonably gives rise to the inference that the funds sent in the wire transfers to pay the smuggling fees were the proceeds of that prostitution. *See United States v. Frazier*, 605 F.3d 1271, 1282 (11th Cir. 2010) (holding that the absence of "evidence that [defendant] had a source of income other than his [drug] smuggling" was sufficient to infer that the wired funds were proceeds of unlawful activity); *United States v. Foreste*, 751 F. App'x 48, 51 (2d Cir. 2018) (evidence that defendant "had no job, and reported no income to the I.R.S." was sufficient for rational jury to find "that the money deposited . . . was the proceeds from" unlawful activity). A rational juror could conclude that the Defendants wired prostitution proceeds which were then used to pay the

---

[5] Fabian Reyes-Rojas pled guilty to sex trafficking conspiracy and to the sex trafficking of Daisy.

14

smuggling fees, and the payment of those fees promoted further sex trafficking activity, by bringing more victims into the United States. The evidence was therefore sufficient to convict Rosalio for conspiracy to engage in the promotional element of money laundering.

## II.    Jury Instruction on 18 U.S.C. § 2423(a)

Defendants next challenge the district court's jury instructions as to 18 U.S.C. § 2423(a), which, as relevant here, makes it a crime to "knowingly transport[] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution[.]"[6]

Defendants argue that to be convicted under 18 U.S.C. § 2423(a), the plain terms of the statute require that the defendant *know* the individual he transported was under eighteen, and therefore the district court erred by instructing the jury that the Defendants did not need to have such knowledge. Binding precedent establishes otherwise.

---

[6] The statute also prohibits such transport "with the intent that the individual engage . . . in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a). However, the Defendants were charged with, and the jury was instructed on, solely the "prostitution" prong of the offense.

We review preserved challenges to jury instructions *de novo*. *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (quotation marks omitted). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* (quotation marks omitted). Questions of statutory construction are also reviewed *de novo*. *See United States v. Shyne*, 617 F.3d 103, 106 (2d Cir. 2010).

In *United States v. Griffith*, 284 F.3d 338 (2d Cir. 2002), we held that knowledge of the victim's age is not required under § 2423(a). *See id.* at 351. Defendants assert that a trio of subsequent Supreme Court decisions have abrogated that decision. *See Flores-Figueroa v. United States*, 556 U.S. 646 (2009); *Rehaif v. United States*, 139 S. Ct. 2191 (2019); *Ruan v. United States*, 597 U.S. 450 (2022). In *Rehaif* and *Ruan*, the Supreme Court affirmed the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Rehaif*, 139 S. Ct. at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)); *Ruan*, 597 U.S. at 458. Meanwhile, in *Flores-Figueroa*, the Court announced that, where a

16

criminal statute uses the term "knowingly," courts should presume that that *mens rea* applies to all subsequently listed elements in that statute. 556 U.S. at 656–57.

But the Supreme Court, in each of those cases, simultaneously recognized "special context[s]" that require departing from the common law presumption in favor of scienter as to each element of a crime. *See, e.g.*, *Flores-Figueroa*, 556 U.S. at 652. Such special contexts include knowledge of the victim's age in sex offenses against minors, which is the precise conduct proscribed by § 2423(a). *See id.* at 652–53; *X-Citement Video, Inc.*, 513 U.S. at 72 n.2.

Moreover, as we recognized in *Griffith*, in § 2423(a), it is not the victim's age that marks the boundary between "lawful and unlawful conduct," because 18 U.S.C. § 2421 criminalizes the same conduct as § 2423 with the exception of an age requirement. *Griffith*, 284 F.3d at 350–51. Thus, the "defendant is already on notice that he is committing a crime when he transports an individual of any age in interstate commerce for the purpose of prostitution." *Id.* Imposing a *mens rea* requirement as to the age of the victim therefore does not serve the presumption that the defendant must be aware of the facts separating "wrongful from innocent acts." *Rehaif*, 139 S. Ct. at 2197.

For those reasons, *Griffith* is consistent with the Supreme Court's subsequent decisions, and we remain bound by it. The district court did not err in instructing the jury that § 2423(a) does not require knowledge that the victim is a minor.

## III.   Evidentiary Challenge

Rosalio challenges the district court's admission of testimony by certain victims that they were forced to have abortions. Under Federal Rule of Evidence 403, otherwise relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice." We review Rule 403 rulings for "abuse of discretion," and will reverse only "[w]here there was inadequate consideration of the probative value of the evidence, or a failure to adequately consider the risk of unfair prejudice and to balance this risk against probative value." *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015).

In a pre-trial conference, the district court held that the testimony was "relevant and probative of whether or not [the victims] were coerced into prostitution and commercial sex and other sexual activities. It demonstrates that the defendants engendered fear." Joint App'x at 108. But the district court also

warned the Government to treat the testimony "very carefully . . . so as not to unduly inflame." *Id.* at 109.

We detect no abuse of discretion in the district court's balancing analysis. The court properly determined that the testimony had probative value because it directly related to the charged sex trafficking offenses.[7] The court also adequately considered and took steps to minimize the dangers of unfair prejudice. Rosalio nevertheless asserts that the subject of abortion is so inflammatory that the testimony was necessarily unfairly prejudicial. But we reject that argument; this particular evidence is "no more inflammatory than the facts of the charged [offenses]." *United States v. Reichberg*, 5 F.4th 233, 242 (2d Cir. 2021).

Rosalio further argues that in some instances, the testimony indicated that the victims resisted or were at most tricked into receiving an abortion, which he claims is not probative of coercion. That argument also misses the mark. Even if the victims resisted or were tricked into having the abortions, they ultimately

---

[7] Indeed, we have recently affirmed the admission of abortion evidence, on similar grounds, by summary order. *See United States v. Raniere*, No. 20-3520-CR, 2022 WL 17544087, at *6 (2d Cir. Dec. 9, 2022), *cert. denied*, 143 S. Ct. 1756 (2023) (evidence that co-conspirator procured victims' abortions was probative of whether that person "facilitated the abuse of" sex-trafficking victims).

19

underwent abortions against their will. The evidence is therefore probative of the environment of fear and coercion that Defendants used to force the women into prostitution. Moreover, 18 U.S.C. § 1591 prohibits not only sex trafficking through coercion, but also by fraud, and the Defendants' use of trickery to obtain abortions is highly probative evidence that their promises used to recruit victims into the trafficking operation—that they would start families together—were fraudulent. There was no error here.

## IV.  Confrontation Clause

Abel argues that his rights under the Confrontation Clause of the Sixth Amendment were violated when the district court and the Government intervened during his attorney's cross-examination of Diana.

A district court has "wide latitude" to reasonably limit "cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Simply put, the Confrontation Clause provides only "an *opportunity* for effective cross-examination," and does not guarantee a "cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). We therefore will reverse only for abuse of discretion, *see United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003), and we see none here.

Regarding the Government's actions, nothing suggests that its objections during Diana's cross-examination were improper, or that the district court erred in allowing the Government to discuss its objections at a sidebar, outside the presence of the jury.[8] The district court's colloquy with Diana attempted to ensure she understood what it meant for a document to refresh her recollection, because she did not speak English and appeared not to understand defense counsel's question on that subject. A district court does not err when it attempts to prevent "confusion of the issues" and ensure that a witness understands the question she is asked, *see Van Arsdall*, 475 U.S. at 679, particularly when the question invokes a legal concept unfamiliar to most lay witnesses. In any event, defense counsel was able to continue cross-examination afterwards, and nothing restricted counsel's ability to do so. We reject Abel's argument accordingly.

---

[8] Furthermore, the district court's admission in front of the jury that it was having difficulty reading the document merely demonstrated that a sidebar was necessary to clarify the questioning.

21

## V.     Verdict Sheet

Osvaldo argues that the district court's general verdict form for Count 15, money laundering conspiracy under 18 U.S.C. § 1956(a)(1), and (h), makes it impossible to tell whether the jury convicted him on a theory of liability for which there was insufficient evidence.

A general verdict sheet, must be overturned if that "verdict is supportable on one ground but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). However, that rule applies only to "legal error," that is, "a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence." *Griffin v. United States*, 502 U.S. 46, 56–59 (1991). Therefore, "where the error in a verdict is factual, as where one basis for conviction is 'unsupported by sufficient evidence,' a guilty verdict 'stands if the evidence is sufficient with respect to any one of the acts charged.'" *United States v. Salmonese*, 352 F.3d 608, 624 (2d Cir. 2003) (quoting *Griffin*, 502 U.S. at 56–57).

Section 1956(a)(1) has a promotional prong and a concealment prong, either of which is independently sufficient for liability. *See United States v. Quinones*, 635 F.3d 590, 597 (2d Cir. 2011). Although the district court instructed the jury that it must be unanimous as to at least one of those theories, its verdict form did not require the jury to specify which of the two theories was the basis for its verdict. Osvaldo argues that there is insufficient evidence to prove the concealment prong, and therefore the general verdict cannot stand because the jury might have erroneously convicted him on the concealment prong. But there is no error, as Osvaldo's argument is premised solely on the factual sufficiency of the evidence; it involves no mistake of law. And because Osvaldo concedes that the evidence was sufficient for conviction on the promotional prong, the guilty verdict stands. *See Salmonese*, 352 F.3d at 624.

## VI. Motion for a New Trial on Jencks Act Material

Abel argues that the district court erred when it denied his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. According to Abel, he is entitled to a new trial because the Government elicited testimony from Diana that was not contained in the Government's prior disclosures, which

23

demonstrates that the Government improperly withheld material that it was required to disclose under the Jencks Act, 18 U.S.C. § 3500.[9]

Rule 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review for abuse of discretion, *see United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006), and will reverse only if "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice," *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (quotation marks omitted).

The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the

---

[9] Abel further argues that the inconsistencies between Diana's testimony and prior statements demonstrates that the Government suborned her perjury. We reject this contention for the same reasons that we reject his contention that Diana's testimony was incredible as a matter of law. "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). Moreover, "when testimonial inconsistencies are revealed on cross-examination," it is for the jury to "determine whether an inconsistency in a witness's testimony represents intentionally false testimony or instead has innocent provenance such as confusion, mistake, or faulty memory." *United States v. Josephberg*, 562 F.3d 478, 494–95 (2d Cir. 2009) (quotation marks omitted).

24

witness has testified." 18 U.S.C. § 3500(b). A "statement" includes a "verbatim" transcription of an "oral statement." *Id.* § 3500(e). The Jencks Act, however, imposes no obligation on the Government to make written notes of its meetings with witnesses. *See United States v. Rodriguez*, 496 F.3d 221, 224–25 (2d Cir. 2007). Moreover, the harmless error doctrine applies to Jencks Act violations. *See Goldberg v. United States*, 425 U.S. 94, 111 n.21 (1976); *United States v. Nicolapolous*, 30 F.3d 381, 383–84 (2d Cir. 1994).

The district court did not abuse its discretion here. To the extent Abel contends that the Government failed to create written notes of any alleged additional meetings with Diana, we find no error because the Government has no obligation to memorialize all its meetings with witnesses under the Jencks Act. *See Rodriguez*, 496 F.3d at 224–25. To the extent Abel contends that the Government withheld relevant Jencks Act material, there is no basis in the record that any such material existed. In any event, any error would be harmless because defense counsel cross-examined Diana on the inconsistencies between her statements in the § 3500 material and her testimony at trial. Defense counsel also extensively described Diana's inconsistencies to the jury in summation. At most, the

25

hypothesized notes would have shown that Diana had made additional statements containing identical inconsistencies to those already elicited during her trial testimony. *See United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998) ("It is well settled that where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial."). Nothing suggests that Diana would have testified differently, or that the jury would have heard different arguments, had the Government disclosed any alleged additional notes. We therefore reject Abel's argument.

## VII. Sentencing Challenges

Rosalio challenges the substantive reasonableness of his sentence of 472 months' imprisonment, while Abel argues that his five-year sentence for his illegal reentry conviction was procedurally unreasonable. We reject Rosalio's argument, but we remand Abel's sentence to the district court for correction.

### A. Rosalio

"[O]ur review of a sentence for substantive reasonableness is particularly deferential," and we do not "substitut[e] our own judgment for that of district

26

courts." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). "A sentence is substantively unreasonable when it cannot be located within the range of permissible decisions, because it is shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Osuba*, 67 F.4th 56, 68 (2d Cir. 2023) (quotation marks omitted).

Rosalio argues that his sentence was substantively unreasonable (1) because the court failed to give sufficient weight to his proffered mitigating circumstances, including childhood abuse, and (2) the shorter sentence given to his co-defendant, Francisco. As an initial matter, Rosalio's sentence was below the Guidelines range of life imprisonment and it is "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011). Additionally, the district court properly applied the sentencing factors in 18 U.S.C. § 3553(a), explaining that Rosalio's mitigating circumstances did not warrant leniency based on the nature and circumstances of the offense, which it found "could not be more heinous." Rosalio Sp. App'x at 20. The district court further explained that any mitigating factors could not "possibly excuse the despicable acts of violence, threats, and pain" caused by Rosalio's crimes, and that his

27

submissions failed to "hint[] at either acceptance of responsibility, or the slightest remorse." *Id.* at 25. In light of these circumstances, Rosalio's sentence is not "shockingly high," and "if the ultimate sentence is reasonable . . . , we will not second guess the weight (or lack thereof) that the judge accorded to a given factor." *United States v. Pope*, 554 F.3d 240, 246–47 (2d Cir. 2009) (internal alterations adopted). As for the purported sentencing disparity between Rosalio and Francisco, we have made clear that a district court is not required to consider sentencing disparities between codefendants. *United States v. Stevenson*, 834 F.3d 80, 84 (2d Cir. 2016). In any event, the district court identified several factors, such as Francisco's youth and lesser number of victims, that explain the difference between his sentence and that of Rosalio.

### B. Abel

Abel argues that the district court procedurally erred when it sentenced him to five years' imprisonment and three years of supervised release for Count 18, charging illegal reentry in violation of 8 U.S.C. § 1326(a). That sentence exceeds the maximum authorized statutory penalty for the offense and is therefore plain error. *See* 8 U.S.C. § 1326(a) (providing for imprisonment of up to two years);

*United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) ("[A] sentence that exceeds the statutory maximum qualifies as plain error."). We therefore remand for the district court to resentence Abel as to Count 18.

*   *   *

For the foregoing reasons, the convictions and sentences of all Defendants-Appellants except Abel Romero-Melendez are **AFFIRMED**, and the judgment with respect to Abel Romero-Melendez is **VACATED** and **REMANDED** for resentencing on Count 18.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

29